IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ABDUL HADI OMER HAMOUD FARAJ,**

   *Petitioner,*

   v.

**GEORGE W. BUSH,** *et al.,*

   *Respondents.*

Case No. 1:05CV01490 (PLF)

**PETITIONER'S RESPONSE TO
RESPONDENTS' AMENDED
MOTION TO STAY PROCEEDINGS**

     Petitioner, Abdul Hadi Omer Hamoud Faraj, submits this Response to Respondents' Amended Motion to Stay Proceedings.  As explained below, Petitioner does not object to a stay as long as it is subject to certain, important conditions that have become increasingly routine in Guantánamo detainee *habeas* cases and that are designed to protect Petitioner's rights during the pendency of the stay.

     If the requested stay were an issue of first impression, Petitioner would oppose Respondents' stay motion in entirety.  However, Judge Green stayed the Guantánamo detainee cases under her supervision, and this Court and other Judges in this District have followed suit in the *habeas* cases assigned to them.[1]  Given these circumstances, Petitioner does not ask the Court to deny Respondents' stay motion in its entirety.  Still, a petition for writ of *habeas corpus* by a Guantánamo detainee raises serious and compelling issues, and Petitioner's confinement, and the conditions of his confinement, may well continue during the duration of the period that the stay

---

[1] *See* cases cited in Respondents' Amended Motion to Stay at 7-8 and n. 6.

is in force – a period that may be of considerable length as the appellate process unfolds. Thus, Petitioner respectfully submits that it is appropriate for this Court, consistent with actions which it and other Judges in this District have taken in numerous cases involving Guantánamo detainees, to impose several important conditions: (1) the Court should enter the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base at Guantánamo Bay in the form issued by Judge Green (the "APO"), allowing, among other things, counsel access to classified factual returns and to the detainees themselves; (2) the Court should require Respondents to produce a factual return within 45 days; (3) the Court should require Respondents to provide 30-days advance notice to counsel and the Court of any proposed transfer of Petitioner from the Guantánamo detention facilities; and (4) the Court should order Respondents to preserve and maintain any and all evidence regarding any torture, mistreatment, and abuse of Petitioner.[2] A proposed order to such effect is submitted with this Response.

        **1.     The Court Should Enter the APO and Supplemental Orders.**

Respondents agree that, if the Court enters the requested stay, the Government will not "block counsel access to properly represented petitioners." Amended Motion to Stay at 2. Toward that end, Respondents do not object to the entry of the APO and supplemental orders previously issued by Judge Green and negotiated by Respondents and other *habeas* counsel. Petitioner respectfully requests the Court to issue the orders attached as exhibits to Respondents' motion, thereby allowing counsel access to Petitioner and to the classified factual return under the stated conditions.

---

[2] Pursuant to Local Rule 7.1(m), counsel for Petitioner has conferred with counsel for Respondents regarding these conditions, but while the Government agrees to entry of the APO, the parties have been unable to reach agreement regarding the other conditions.

### 2. The Stay Should Not Excuse Respondents From the Timely Production of the Factual Return Relating to Petitioner.

The requested stay should not excuse Respondents from providing Petitioner's factual return to counsel promptly.  Factual returns are of great importance to counsel.  They enable counsel to interview their clients, their clients' families and others on a focused and informed basis, and otherwise to investigate and prepare their clients' cases - and to do so while memories are still fresh, witnesses and documents still available and other evidence still within reach.  *See, e.g., Al-Mohammed v. Bush*, No. 05-CV-00247 (HHK), slip op. at 2-3 (D.D.C. Apr. 30, 2005) (Dkt. No. 18).

This Court, in *Al-Wazan v. Bush*, No. 05-CV-0392 (PLF) (D.D.C. June 14, 2005) (Dkt. No. 37), and at least nine other Judges in this District,[3] have required Respondents to provide factual returns even while staying the cases pending appeal.  These Judges have recognized that counsel have a duty to begin preparing their clients' cases while the appeals are pending and that "even initial conversations by counsel with their clients may be very difficult without access to that basic factual information."  *Al-Anazi v. Bush,* 05-CV-00345 (JDB), slip op. at 20 (D.D.C. April 21, 2005) (Dkt. No. 22); *see also Al-Mohammed, supra*, at 2 ("petitioners' counsel must have access to [the returns] in order to develop a meaningful understanding of the basic factual

---

[3] *See El-Mashad v. Bush*, No. 05-CV-0270 (JR) (D.D.C. Apr. 7, 2005) (Dkt No. 29); *Abdullah v. Bush*, No. 05-CV-0023 (RWR) (D.D.C. Apr. 8, 2005) (Dkt No. 24); *Ameziane v. Bush*, No. 05-CV-0833 (ESH) (D.D.C. Apr. 12, 2005) (Dkt No. 12); *Al-Anazi v. Bush*, No. 05-CV-0345 (JDB) (D.D.C. Apr. 21, 2005) (Dkt No. 21); *Al Joudi v. Bush*, No. 05-CV-0301 (GK) (D.D.C. Apr. 29, 2005) (Dkt. No. 26); *Al Mohammed v. Bush*, No. 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (Dkt No. 18); *Battayav v. Bush*, No. 05-CV-0714 (RBW) (D.D.C. May 19, 2005) (Dkt No. 12); *Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (Dkt No. 16); *Errachidi v. Bush*, No. 05-CV-0640 (EGS) (D.D.C. April 21, 2005) (undocketed minute order).  In only four cases has access to factual returns been denied.  *See* Amended Motion to Stay at 12, n. 11.

allegations . . . and prepare for consultation with their clients"). Furthermore, they have noted that requiring Respondents to provide returns now will "ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." *Kurnaz v. Bush*, No. 04-CV-1135 (ESH), 2005 WL 839542, at *1 (D.D.C. April 12, 2005). There is no basis for any different reasoning or result in this case.

### a. Respondents' Arguments Against Providing Returns are Unpersuasive.

Respondents complain that providing factual returns would confront them with "an immense logistical burden." Amended Motion to Stay at 12. Any such "burden" to Respondents, however, is far outweighed by Petitioner's interest in ensuring that his counsel at the very least is able to develop a meaningful understanding of the basic factual allegations against Petitioner.

Respondents' asserted "burden," moreover, is vastly overblown. The factual return is simply the record of proceedings before the Combatant Status Review Tribunal (the "CSRT"). *See id*. at 11, n.10. This record of the CSRT proceedings already exists. Classification decisions regarding the information in the record of those proceedings were made *before* the proceedings began, and the entirety of the proceedings underwent legal review upon their completion. *See, e.g.*, Memorandum from Bree A. Ermintrout, to Director, Combatant Status Review Tribunal, Jan. 18, 2005, *in* Factual Return for Petitioner Abdulsalam Ali Abdulrahman Al-Hela, *Al-Hela v. Bush*, No. 05-CV-01048 (MU) (D.D.C. June 15, 2005) (Dkt. No. 22) (attached as Exhibit A). The only "burden" facing Respondents now is photocopying, sorting and stapling.

Respondents further claim that the return would be useless to Petitioner's counsel because counsel could not share with Petitioner the classified information in the return. Amended Motion to Stay at 12. However, not all the information in the return is classified. The allegations against Petitioner and findings of the CSRT, which are set forth in the return, are not

classified; until Petitioner's counsel have seen the return, they will not know what Petitioner is accused of having done, and cannot meaningfully interview Petitioner or begin to investigate or prepare his case.  The returns also include (1) an unclassified discussion of the classified information in the returns; (2) an unclassified summary of the transcript of the CSRT hearings, including any statement or testimony by Petitioner or his "personal representative;" and (3) other unclassified information that counsel have found highly useful in their representation of other detainees.

In addition, although counsel may not disclose classified information in the returns to Petitioner, knowing that information will enable counsel to focus their investigation and preparation of Petitioner's case and to seek from Petitioner and others facts pertinent to his "enemy combatant" designation, as Judge Kennedy recognized in *Al-Mohammed*.

Finally, the suggestion by Respondents that providing the factual return in this case would increase the risk of inadvertent disclosure - or other compromise - of classified information, *id*. at 12, is utterly baseless.  Only counsel who have been granted security clearances and submitted themselves to the stringent APO may see the classified information in the returns.  Petitioner's counsel have all already received security clearances in another Guantánamo detainee case that they are handling.  "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al-Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004).  Counsel are unaware of any report that classified information provided by Respondents to cleared counsel in Guantánamo detainee cases has been disclosed or otherwise compromised.

### b. The Factual Return Can and Should be Made within 45 Days.

In *Al-Wazan v. Bush*, this Court ordered Respondents to produce a factual return but gave the Government 90 days within which to make such production. However, a number of other Judges have ordered factual returns within 45 days (or less), and the Government has apparently had no problem complying. *E.g., Al-Mohammed v. Bush, supra*; *Al Shamri v. Bush*, No. 05-CV-0551 (RWR) (D.D.C. May 11, 2005) (Dkt. No. 10) (30 days); *Al Rashaidan v. Bush*, No. 05-CV-0586 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 10) (30 days). As noted above, the materials typically provided by Respondents in a factual return have largely already been assembled by Respondents. Respondents have provided no reason why this case is any different from *Al-Mohammed* or any of the other *habeas* cases in which compliance with a 45-day deadline was plainly feasible. Short of any such specific reasons, Petitioner submits that a 45-day deadline is appropriate here and should be ordered by the Court.

### 3.   As a Condition of Granting the Requested Stay, the Court Should Require Respondents to Provide Advance Notice Before Removing Petitioner From Guantánamo and Explicitly Permit Petitioner To Seek Emergency Relief.

This Court in both *Al-Wazan v. Bush,* No. 05-CV-0329 (PLF) (D.D.C. April 1, 2005) (Dkt. No. 19), and *Al-Shihry v. Bush*, No. 05-CV-0490 (PLF) (D.D.C. April 20, 2005) (Dkt. No. 17), ordered Respondents to provide counsel and the Court with 30-days advance notice before removing *habeas* petitioners from Guantánamo. Other Judges of this Court, in numerous other cases, have entered similar orders. Some of those Judges, including this Court, have imposed this notice requirement by means of a preliminary injunction.[4] Others have required advance

---

[4] *See, e.g., Al-Adahi v. Bush*, No. 05-CV-00280 (GK) (D.D.C. April 28, 2005) (Dkt. No. 34); *Al Joudi v. Bush*, No. 05-CV-00301 (GK) (D.D.C. April 4, 2005) (Dkt. No. 19); *Al-Marri v. Bush*, No. 04-CV-2035 (GK) (D.D.C. April 4, 2005) (Dkt. No. 33); *Al-Mohammed v. Bush,* No. 05-CV-00247 (HHK) (D.D.C. March 30, 2005) (Dkt. No. 18); *Abdah v. Bush*, No. 04-CV-01254

notice as a condition of issuing a stay.[5] The mechanism is not material, but the result is of critical importance. Thus, the Court in this case should impose a 30-day advance notice requirement as a condition of entering a stay. Moreover, the stay, like the stays in the other cases, should explicitly permit Petitioner to seek emergency relief. *See, e.g., Al-Shihry v. Bush*, No. 05-CV-0490 (PLF) (D.D.C. March 23, 2005) (Dkt. No. 14).

Respondents have made it abundantly clear that they intend to transfer many of the detainees currently held at Guantánamo to their home countries or other countries for continued detention. *See, e.g.,* "Guantánamo Detention Site Is Being Transformed, U.S. Says," by Neil A. Lewis, *The Washington Post*, August 5, 2005 (attached as Exhibit B). Although counsel has no information that Petitioner, a Syrian national, or any of the other Syrian detainees are being considered for such a transfer, Petitioner stands to suffer immeasurable and irreparable harm – from indefinite incarceration to torture to possible death – at the hands of a foreign government such as Syria if such a transfer occurs.

According to the U.S. State Department, Syria is a serial human rights violator: "Continuing serious abuses included the use of torture in detention, which at times resulted in death; poor prison conditions; arbitrary arrest and detention; prolonged detention without trial; fundamentally unfair trials in the security courts; and infringement on privacy rights." U.S.

---

(HHK) (D.D.C. March 29, 2005) ( Dkt. No. 147).

[5] *See, e.g., Al-Hela v. Bush*, No. 05-CV-01048 (RMU) (D.D.C. June 3, 2005) (Dkt. No. 12); *Kurnaz v. Bush*, No. 04-CV-1135 (ESH) (D.D.C. April 12, 2005) (Dkt. No. 96); *Ameziane v. Bush*, No. 05-CV-00392 (ESH) (D.D.C. April 12, 2005) (Dkt. No. 12); *Abdullah v. Bush*, No. 05-CV-00023 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 24); *Al Rashaidan v. Bush*, No. 05-CV-00586 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 10); *El-Banna v. Bush*, No. 04-CV-1144 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 141); *Tumani v. Bush*, No. 5-CV-00526 (RMU) (D.D.C. April 6, 2005) (Dkt. No. 5); *Qayed v. Bush*, No. 05-CV-00454 (RMU) (D.D.C. April 6, 2005) (Dkt. No. 4); *Al-Oshan v. Bush*, No. 05-CV-00520 (RMU) (D.D.C. March 31, 2005) (Dkt. No. 12).

Department of State, Country Reports on Human Rights Practices – 2004 – Syria (Feb. 28, 2005) (available at http://www.state.gov/g/drl/rls/hrrpt/2004/41732.htm); *see also* Jane Mayer, *Outsourcing Torture*, The New Yorker, Feb. 14, 2005 (available at http://www.newyorker.com/fact/content/?050214fa_fact6) (describing Syrian officials' torture of a Syrian-born Canadian national rendered to them by the U.S. Government).

Respondents, in contrast, who have already held Petitioner and other detainees for more than three years, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo. Respondents can suffer no conceivable harm from complying with such a request. Indeed, Judge Kessler has noted that such relief is "concrete, narrow, and minimally burdensome" and that "[t]he requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper. Such a minimal consequence does not outweigh the imminent threats of indefinite detention, potential torture, and the elimination of [the petitioner's] claims." *Al Joudi v. Bush*, No. 05-CV-0301 (GK), slip op. at 14, 15 (D.D.C. Apr. 4, 2005) (Dkt No. 19).

Finally, transfer to another country, even if for continued imprisonment alone, would effectively deprive Petitioner of his ability to obtain meaningful relief after this Court adjudicates the legality of his detention. Accordingly, a 30-day notice requirement would prevent Respondents from essentially removing Petitioner from this Court's jurisdiction.

    **4.**     **As a Condition of the Requested Stay, the Court Should Order Respondents to Preserve and Maintain Any and All Evidence Regarding Any Torture, Mistreatment, and Abuse of Petitioner.**

Information obtained from former Guantánamo prisoners who have been released and from U.S. Government documents that have been made public indicates that it is probable that at least some prisoners have been subjected to torture, mistreatment, and abuse for the purpose of

obtaining information and confessions. For instance, redacted emails produced by the U.S. Government document the use of "torture techniques" and treatment that was "not only aggressive, but personally very upsetting" during Guantánamo Bay detainee interrogations. *See, e.g.,* Redacted e-mail to Gary Bald, *et al*. (Dec. 5, 2003) (attached as Exhibit C hereto); Redacted e-mail (July 12, 2004) (attached as Exhibit D hereto). Because entry of the proposed stay order will likely result in considerable delay in the ultimate resolution of Petitioner's claims, the Court should order, as a condition of Respondent's requested stay, that Respondents preserve and maintain any and all evidence and information regarding any torture, mistreatment, and abuse of Petitioner while at the Guantánamo Bay detention facilities or while he has otherwise been within Respondents' possession, custody or control.

     The standard in seeking a preservation order is that a party must demonstrate "that it is necessary and not unduly burdensome." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004). That preservation of evidence is necessary is demonstrated by the loss of evidence in several detainee cases. For example, in the case of Pfc. Willie V. Brand, who was charged with assault, maiming and killing an Afghan detainee in Bagram, Afghanistan, the military judge in the trial noted that a key piece of evidence, requested by defense counsel from the Government, appeared to no longer exist. The absence of this evidence, which included logbooks that defense counsel intended to use to show the widespread use of torture techniques in interrogating suspected enemy combatants, hinders counsel's ability to mount a defense. *See* "MP's Defense Asks for Acquittal if Missing Evidence Not Found," by Chris Roberts, *El Paso Times*, July 29, 2005 (attached as Exhibit E). Similarly, in another case, prosecutor Capt. John Carr of the United States Air Force, complained via an e-mail to his superior officer that some exculpatory evidence, including evidence that one of the detainees had been "brutalized," had been lost. In

- 9 -

the same e-mail, Capt. Carr noted that other evidence regarding this issue had been withheld by the U.S. Military, thus depriving the defendants of materials that could prove their innocence. *See* "Two Prosecutors Faulted Trials for Detainees," by Neil A. Lewis, *The New York Times*, August 1, 2005 (attached as Exhibit F). Such examples confirm that the possible harm to be addressed by a preservation order is real.

This Court issued an identical preservation order in *Al-Shihry v. Bush*, Case No. 05-CV-0490 (PLF) (D.D.C. March 23, 2005) (Dkt. No. 14), as did Judge Kessler in *Al-Marri v. Bush*, Case No. 04-CV-2035(GK) (D.D.C. March 7, 2005) (Dkt. No. 25). *See also, e.g., Al-Adahi v. Bush*, No. 05-CV-00280 (GK) (D.D.C. Apr. 28, 2005) (Dkt. No. 33); *Abdah v. Bush*, No. 04-CV-0154 (HHK) (D.D.C. June 10, 2005) (Dkt No. 155); *El-Banna v. Bush*, No. 04-CV-01444 (RWR) (D.D.C. July 18, 2005) (Dkt. No. 149). In *Al-Marri*, Judge Kessler expressly found that entering an identical preservation order would "inflict no harm or prejudice upon [Respondents]." For the same reasons, this Court should enter a preservation order in this case as a condition of Respondents' requested stay.

## Conclusion

For the foregoing reasons, Petitioner does not object to entry of the stay requested in these proceedings, but respectfully submits the following conditions should be imposed: (a) entry of the APO; (b) a requirement that Respondents make a factual return within forty-five (45) days; (c) a requirement that Respondents provide counsel and the Court thirty (30) days advance notice of any proposed transfer of Petitioner from the Guantánamo Bay detention facilities; and (d) a requirement that Respondents preserve and maintain any and all evidence regarding any torture, mistreatment, and abuse of Petitioner.

       Respectfully submitted,

       GARVEY SCHUBERT BARER

       By <u>/s/ Robert C. Weaver, Jr.</u>
           Robert C. Weaver, Jr. OSB #80135
           Samuel C. Kauffman, OSB #94352
           GARVEY SCHUBERT BARER
           Eleventh Floor
           121 SW Morrison St.
           Portland, OR 97204
           Tel: (503) 228-3939
           Fax: (503) 226-0259

       By <u>/s/ Eldon V.C. Greenberg</u>
           Eldon V.C. Greenberg
           D.C. Bar #159558
           GARVEY SCHUBERT BARER
           Fifth Floor
           1000 Potomac Street, N.W.
           Washington, DC 20007
           Tel: (202) 965-7880
           Fax: (202) 965-1729

       <u>Attorneys for Petitioner</u>

Dated: September 20, 2005