IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULLAH THANI FARIS AL-ANAZI, *et al.,* | ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) Civil Action No. 05-CV-0345 (JDB)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) |
| Respondents. | ) ) |
| FAWZI AL ODAH, *et al.,* | ) ) |
| Petitioners, | ) ) |
| v. | ) ) Civil Action No. 02-CV-828 (CKK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) |
| Respondents. | ) ) |
| SUHAIL ABDU ANAM, *et al.,* | ) ) |
| Petitioners, | ) ) |
| v. | ) ) Civil Action No. 04-CV-1194 (HHK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) |
| Respondents. | ) ) |

|  |  |  |
|---|---|---|
| ABDUL HADI OMER HAMOUD FARAJ, *et al.*, | ) ) ) ) | |
|       Petitioners, | ) ) | |
|     v. | ) ) | Civil Action No. 05-CV-1490 (PLF)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
|       Respondents. | ) ) | |

|  |  |  |
|---|---|---|
| MOHMOOD SALIM AL-MOHAMMED, *et al.*, | ) ) ) | |
|       Petitioners, | ) ) | |
|     v. | ) ) | Civil Action No. 05-CV-247 (HHK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
|       Respondents. | ) ) | |

|  |  |  |
|---|---|---|
| MOHAMMED, *et al.*, | ) ) | |
|       Petitioners, | ) ) | |
|     v. | ) ) | Civil Action No. 05-CV-2087 (RMC)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
|       Respondents. | ) ) | |

```
_____
                                      )
NABIL, et al.,                        )
                                      )
                Petitioners,          )
                                      )
        v.                            )     Civil Action No. 05-CV-1504 (RMC)(AK)
                                      )
GEORGE W. BUSH,                       )
President of the United States, et al.,  )
                                      )
                Respondents.          )
_____)
                                      )
AL HAWARY, et al.,                    )
                                      )
                Petitioners,          )
                                      )
        v.                            )     Civil Action No. 05-CV-1505 (RMC)(AK)
                                      )
GEORGE W. BUSH,                       )
President of the United States, et al.,  )
                                      )
                Respondents.          )
_____)
                                      )
SAIB, et al.,                         )
                                      )
                Petitioners,          )
                                      )
        v.                            )     Civil Action No. 05-CV-1353 (RMC)(AK)
                                      )
GEORGE W. BUSH,                       )
President of the United States, et al.,  )
                                      )
                Respondents.          )
_____)
```

SHAFIQ, *et al.,*                     )
                                      )
        Petitioners,                  )
                                      )
        v.                            )     Civil Action No. 05-CV-1506 (RMC)(AK)
                                      )
GEORGE W. BUSH,                       )
President of the United States, *et al.,*  )
                                      )
        Respondents.                  )

HASSAN BIN ATTASH, *et al.,*          )
                                      )
        Petitioners,                  )
                                      )
        v.                            )     Civil Action No. 05-CV-1592 (RCL)(AK)
                                      )
GEORGE W. BUSH,                       )
President of the United States, *et al.,*  )
                                      )
        Respondents.                  )

ABDANNOUR SSAMEUR, *et al.,*          )
                                      )
        Petitioners,                  )
                                      )
        v.                            )     Civil Action No. 05-CV-1806 (CKK)(AK)
                                      )
GEORGE W. BUSH,                       )
President of the United States, *et al.,*  )
                                      )
        Respondents.                  )

|  |  |  |
|---|---|---|
| MAHMOUD ABDAH, *et al.,* | ) | |
| Petitioners, | ) | |
| v. | ) | Civil Action No. 04-CV-1254 (HHK)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| HDULSALAM ALI ABDULRAHAM AL-HELA, *et al.,* | ) | |
| Petitioners, | ) | |
| v. | ) | Civil Action No. 05-CV-1048 (RMU)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) | |
| Respondents. | ) | |

|  |  |  |
|---|---|---|
| SAEEK MOHAMMED SALEH HATIM, *et al.,* | ) | |
| Petitioners, | ) | |
| v. | ) | Civil Action No. 05-CV-1429 (RMU)(AK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) | |
| Respondents. | ) | |

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO COMPEL**
**PRIVILEGE TEAM COMPLIANCE WITH THE AMENDED PROTECTIVE ORDER**

Respondents, through undersigned counsel, hereby oppose petitioners' motion to compel

Privilege Team compliance with the Amended Protective Order.

On March 2, 2006, Magistrate Judge Kay authorized a Special Litigation Team to

represent the Department of Defense Privilege Team with respect to petitioners' motion and

ordered the Special Litigation Team to respond on behalf of the Privilege Team by March 13,

2006. The instant opposition is submitted on behalf of respondents in the interest of proper

administration of the protective prder and counsel access regime governing the Guantanamo

detainee habeas cases.

Petitioners' motion seeks an order compelling the Privilege Team (1) to conduct a

security "classification review of every document submitted by habeas counsel, without

exception" and (2) to cease marking any documents or information as "protected information."

*See* Petitioners' Motion to Compel at 18. Notably, petitioners' do not seek relief with respect to

any specific documents submitted to the Privilege Team for classification review. Instead,

petitioners' seek a extraordinarily broad order based on stale grievances with the Privilege Team,

many of which, to respondents' counsel's knowledge, have already been resolved. As explained

below, no basis exists for such an order. The Court not only lacks jurisdiction by virtue of the

Detainee Treatment Act of 2005, which withdraws court jurisdiction over habeas and other

claims by Guantanamo detainees, but the actions of the Privilege Team challenged by petitioners

are fully justified and consistent with the governing protective order and counsel access regime.

First, the Privilege Team is under no legal obligation to perform a classification review of every

piece of information presented to it by habeas counsel. The privileged "legal mail" channels

created by the governing counsel access procedures are reserved for materials "for purposes of

litigating" the habeas corpus cases.  Thus, the Privilege Team has the authority under the access procedures to refuse to conduct a classification review of non-legal information or information that is not for the purpose of the habeas litigation.  Second, the Privilege Team may mark information submitted to it as "protected information."  For these reasons, petitioners' motion to compel should be denied.

## BACKGROUND

On November 8, 2004, Senior Judge Joyce Hens Green, in the context of the then-pending and coordinated Guantanamo Bay detainee habeas cases, entered an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Protective Order"), followed shortly thereafter by certain supplementary orders clarifying and detailing certain matters involved the Protective Order.  *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 10, 2004).  The Protective Order was entered by Judge Green after the parties had engaged in lengthy negotiations, after certain issues had been litigated, and after Judge Green considered a proposed protective order and counsel access procedures and made her own revisions to them.[1]

The Protective Order, *inter alia*, establishes a regime for the protection, handling, and

---

[1] With respect to the cases at issue in petitioners' motion, the Protective Order has been entered by the respective Judges of this Court in every case except *Nabil* (05-CV-1504 (RMC)), *Al Hawary* (05-CV-1505 (RMC)), and *Shafiq* (05-CV-1506 (RMC)).

control of classified and otherwise protected information in light of the unique circumstances of these Guantanamo *habeas* cases, which involve individuals detained as enemy combatants in an overseas military detention facility during wartime. The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, ("Access Procedures"), which are annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees, including procedures and requirements with respect to information and papers delivered by counsel to detainees, as well as obtained by counsel from detainees, "for purposes of litigating the cases in which this Order is issued." *See* Access Procedures § I.

The Access Procedures permit privileged counsel visits and privileged "legal mail" between counsel and a represented petitioner, subject to various requirements and restrictions in recognition of the unique wartime setting of these cases and detentions. Because all communications to and from the wartime detainees at Guantanamo such as petitioners are normally and appropriately subject to security and intelligence screening by the military, the special, privileged legal communications channels created under the Access Procedures are available only for "legal mail" sent solely "for purposes of litigating the cases in which th[e] Order is issued." Access Procedures §§ I, II.E. Privileged "legal mail" is, by definition, limited to:

> Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly filed legal documents relating to that representation.

*Id.* § II.E. Detainees, however, are not permitted to use this privileged mail system for non-legal mail, including communications with others besides their counsel; the Access Procedures

contemplate and require that non-legal communications be routed through the normal mail process at Guantanamo Bay, which includes content screening for national security, intelligence, and physical and personnel security[2] purposes.  *See id.* § IV.B.4.-5. (counsel may not use legal mail channels as conduit for non-legal mail; non-legal mail subject to review by military); *see also id.* § VI.C. (messages to others besides counsel to be processed as non-legal mail); § IV.A.5. (non-legal mail communications to detainees to be sent to detainee through normal, non-privileged mail channels).

Also in recognition of the unique, wartime setting of these cases and detentions, including that information possessed by detainees could have national security or physical and personnel security implications warranting potential treatment of the information as classified information, the Access Procedures require that communications from detainees and information learned from them be treated as presumptively classified.  *See* Access Procedures §§ III.A., IV.A.6., VI.  Such information, including letters and materials reflecting communications to counsel from a represented detainee, may only be handled in a secure fashion and within the secure facility established for such purposes.  *See* Protective Order ¶ 26; *id.* ¶¶ 20-24.  Counsel, however, may submit such materials to the DoD Privilege Team for a "determination of its appropriate security classification."  *See* Access Procedures § VII.; *see also id.* § IV.A.6. (counsel required to treat information learned from a detainee, "including any oral and written communications with a detainee," as classified pending review by Privilege Team).

As set forth in the Access Procedures, the Privilege Team is "[a] team comprised of one

---

[2] This would include information concerning the Guantanamo Bay facility and its personnel.

or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee."[3]  *Id*. § II.D. Absent Court authorization or the consent of counsel submitting the information to the Privilege Team, the Privilege Team cannot disclose to anyone information learned from their review activities, except that the Privilege Team may disclose information indicating an "immediate and substantial harm to national security" or "imminent acts of violence" to officials with a role in responding to such potential harms or violence.  *See id*. § VII. A., D.-F.  Materials properly marked by the Privilege Team as classified may only be handled in a secure fashion and within the secure facility; of course, materials determined to be unclassified are not subject to such treatment.  *See* Protective Order ¶ 26; *id*. ¶¶ 20-24.   Information can also be designated as "protected information," which is information that must be treated as confidential and under seal, though not classified, in order to protect government security interests or other significant government interests.  *See* Protective Order ¶¶ 1, 11, 35-45; Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 10, 2004).

On February 21, 2006, petitioners in twelve of the above-captioned cases filed a motion to motion to compel Privilege Team compliance with the Protective Order.  Petitioners in three additional cases – *Abdah*, *Al-Hela*, *Hatim* – joined the motion by filing a single-page case caption on February 22, 2006.  Thereafter, on March 2, 2006, United States Magistrate Judge

---

[3] The Team may also include translators meeting the same qualification.  *See* Access Procedures § II.D.

Alan Kay issued an order appointing a Special Litigation Team to represent the Privilege Team

in its response to petitioners' motion to compel, pursuant to the terms of Judge Kay's February 2,

2006 Order, authorizing a Special Litigation Team in *Salahi v Bush*, 05-CV-569 (JR) (dkt. no.

49). Judge Kay further ordered that the Special Litigation Team respond to petitioners' motion

to compel by March, 13, 2006. Although a Special Litigation Team has been appointed to

represent the interests of the Privilege Team, respondents submit this opposition based on their

own interest in the proper administration of the Protective Order and Access Procedures.

Because petitioners' motion does not seek relief with respect to particularized privileged

documents submitted to the Privilege Team for classification review, respondents' opposition is

limited solely to a discussion of the general legal issues raised in petitioners' motion regarding

the scope of the Privilege Team's authority under the Protective Order and Access Procedures.

As explained below, petitioners' motion to compel should be denied based on the Detainee

Treatment Act of 2005 and petitioners' erroneous understanding of the Privilege Team's

authority under the Protective Order and Access Procedures.

## ARGUMENT

### I.     The Court Lacks Jurisdiction To Order Relief.

On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X,

119 Stat. 2680 ("the Act"), became law. The Act, among other things, amends the federal

habeas corpus statute to remove court jurisdiction to hear or consider applications for writs of

habeas corpus and other actions brought in this Court by or on behalf of aliens detained at

Guantanamo. Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court,

justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens

detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants; § 1005(e)(2) of the Act states that the United States Court of Appeals for the District of Columbia Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.  Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider habeas and other actions brought by Guantanamo detainees, was made immediately effective without any reservation for pending cases, while § 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending claims.  *Id.* § 1005(h).  In light of the new, statutory withdrawal of this Court's jurisdiction and the creation of an exclusive review mechanism in the D.C. Circuit, petitioners' request for relief should be denied.  Indeed, because the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," *id.* § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction.  *See Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).

It has been our understanding that it was the sense of the Court to await anticipated

guidance from the D.C. Circuit regarding the effect of the Act[4] before deciding any pending motions, with Magistrate Judge Kay being available to assist the parties in the negotiation and resolution of important matters raised during this interim period, where appropriate. In such circumstances, a stay of all proceedings in the cases, including with respect to petitioners' request for relief, would be appropriate pending the resolution of the effect of the Act. But the Court cannot and should not proceed to consider granting petitioners' request for relief, which seeks to have the Court limit the Privilege Team's authority to review information under the Protective Order and Access Procedures, without first determining whether the Court has jurisdiction under the Detainee Treatment Act. *See*, *e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception.") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

    The nature of the relief requested in petitioners' motion does not warrant departure from such an approach, particularly given the stale nature of petitioners' complaints regarding prior Privilege Team actions and, moreover, the fact that petitioners seek relief merely to satisfy conceptual grievances regarding the scope of the Privilege Team's authority. For these reasons, petitioners will not suffer any immediate or irreparable harm should the Court decide to await a decision from D.C. Circuit regarding the effect of the Act before considering the present motion.

---

[4] The effect of the Act is being addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit. On January 27, 2006, the D.C. Circuit issued a revised supplemental briefing schedule, requiring an initial brief by respondents on February 17, 2006, with an opposition by petitioners due on March 10, 2006, and respondents' reply due on March 17, 2006. Oral argument is scheduled for March 22, 2006.

Indeed, respondents are unclear how certain petitioners who have joined the motion to compel have suffered any cognizable harm or have any basis to assert any complaints against Privilege Team action in light of the fact that the Protective Order has not been entered in their cases.[5]  *See supra* note 1.

In any event, pursuant to the plain language of the Act this Court has no jurisdiction with respect to any of the cases at issue in the motion to compel.  The legal authorities demonstrating that statutes such as § 1005(e)(1) of the Act that remove or extend jurisdiction apply to pending cases and ordinarily should be given immediate effect, are addressed in the supplemental brief on the issue that respondents have filed in the pending appeals in the Court of Appeals, which is attached as Exhibit 1 and is incorporated by reference.  For the reasons explained therein, *see* Ex. 1 at pp. 20-53, the Court lacks jurisdiction over these cases and should not grant the relief sought by petitioners' motion to compel.

---

[5]  Furthermore, six of the fifteen cases at issue in the motion to compel, including three in which the protective order has not been entered, are assigned to either Judge Collyer – *Saib* (05-CV-1353 (RMC), *Nabil* (05-CV-1504, (RMC)), *Al Hawary* (05-CV-1505 (RMC)), *Shafiq* (05-CV-1506 (RMC)), *Mohammed*, (05-CV-2087 (RMC)) – or Judge Bates – *Al Anazi* (05-CV-345 (JDB)).  In light of the Detainee Treatment Act, Judge Bates has held all pending motions in his Guantanamo habeas cases in abeyance pending the outcome of the appeal in the D.C. Circuit. *See, e.g.*, *Hamad v. Bush*, 05-CV-1009 (JDB), Order (March 2, 2006) (dkt. no. 25).  Similarly, Judge Collyer has entered an Order in all of her pending Guantanamo habeas cases "denying without prejudice all pending motions until such time as the District of Columbia Circuit resolves the question of this Court's jurisdiction to adjudicate these cases; and staying the action pending the jurisdictional ruling of the District of Columbia Circuit."  *See, e.g.*, *Mohammed v. Bush*, 05-CV-2087 (RMC), Order (Jan. 27, 2006) (dkt. no. 23).  Thus, at the very least, the Court should take no action on petitioners' motion in these cases.

**II.     The Privilege Team Has Authority Under the Protective Order and Access Procedures To Decline Classification Review Of Non-Legal Materials And Other Information Intended For Purposes Other Than The Habeas Litigation.**

Even aside from the question of jurisdiction, petitioners' request for order compelling the Privilege Team to perform a security "classification review of every document submitted by habeas counsel, without exception" lacks merit.  *See* Petitioners' Motion to Compel at 18. Petitioners' seek an extraordinarily broad order that would require the Privilege Team to perform a classification review of any and every document or piece of information submitted by habeas counsel, regardless of its content, its relevance to the pending habeas litigation, or the source or manner by which it was obtained.  Such an overreaching order is not warranted by the Protective Order or the Access Procedures.

As explained above, consistent with the unique circumstances of these cases, which involve aliens detained during wartime in an overseas military detention facility, the Protective Order and Access Procedures impose two substantial limitations on the privileged communications system that has been established for habeas counsel and petitioners.  First, the Access Procedures state at the outset that they govern counsel access solely "for purposes of litigating the cases in which the Order is issued."[6]  *See* Access Procedures § I.  Second, privileged communications are limited to "legal mail," as defined by section II.E of the Access Procedures.  In light of these limitations, the Privilege Team unquestionably has the authority to refuse to perform a classification review of non-legal information as well as information that is not for purposes of the pending habeas litigation.

---

[6] Remarkably, petitioners ignore this provision altogether and argue that "the purpose of which the document will ultimately be used is of [no] relevance for the Privilege Team's duties under the Protective Order."  See Petitioners' Motion to Compel at 11.

This conclusion is supported by the fact that detainees are not permitted to use the privileged mail system for non-legal mail, including communications with others besides their counsel. The Access Procedures contemplate and require that non-legal communications be routed through the normal mail process at Guantanamo Bay, which includes content screening for national security, intelligence, and physical and personnel security purposes. *See id*. § IV.B.4.-5. (counsel may not use legal mail channels as conduit for non-legal mail; non-legal mail subject to review by military); *see also id.* § VI.C. (messages to others besides counsel to be processed as non-legal mail); § IV.A.5. (non-legal mail communications to detainees to be sent to detainee through normal, non-privileged mail channels). Indeed, the Access Procedures state that any non-legal information received by counsel through the privileged communications channels must be returned to military personnel at Guantanamo for processing in accordance with standard operating procedures for detainee non-legal mail. *See id.* §§ IV.B.5, VI.C. Thus, it would be an abuse by counsel and petitioners of the privileged legal mail channels created "for purposes of litigating the [habeas] cases" to permit petitioners to use those channels to conduct potential business or seek legal advice related to other matters.[7] For example, it is beyond

---

[7] To require otherwise, and order the Privilege Team to conduct a classification review of every document submitted by habeas counsel, could ultimately blur the well-established distinction in the Access Procedures between legal and non-legal mail. Indeed, detainees would have little incentive to send non-legal mail through non-legal channels given the knowledge that any document, whether non-legal or legal, presented to the Privilege Team would have to be reviewed and, if unclassified, could be distributed by counsel. Respondents, of course, presume that habeas counsel act in good faith and would return any non-legal documents to Guantanamo, as they are required to do under the Access Procedures. *See* Access Procedures §§ IV.B.5, VI.C. However, the broader point is that if petitioners' proposed order is accepted, habeas counsel would be the sole and final arbiter of whether a document is appropriate for consideration by the Privilege Team and, regardless of any objection to the contrary, the Privilege Team would be compelled to perform a classification review of that document.

dispute that patently obvious non-legal mail such as letter from a detainee to his family or a work of fiction written by a detainee during his detention is not appropriate for review by the Privilege Team.[8]  However, under habeas counsel's proposed framework, the Privilege Team would be powerless to refuse to review to such material.  The Privilege Team, accordingly, serves as an appropriate check on such improper submissions, however innocent, by refusing to review information that is of a non-legal nature or that is intended for purposes other than the habeas litigation.

Although petitioners do not ask for relief with respect to specific documents submitted for review by the Privilege Team, they provide several examples of documents that the Privilege Team refused to review in order to illustrate alleged misconduct by the Privilege Team.  *See* Petitioners' Motion to Compel at 12-13.  Aside from the fact that some of the issues have long since been resolved, the cited examples do not establish any impropriety by the Privilege Team.[9] First, counsel complain that the Privilege Team refused to review certain letters submitted prior to November 2005 that "tell the world" about the alleged torture the detainee has suffered, *id.* at 12, but the accompanying memorandum from the Privilege Team establishes that the detainee wrote the letter to counsel with the instruction that counsel pass along the information to the detainee's family, among others.  *See* Declaration of Marc Falkoff, Exhibit C.  Thus, the detainee was improperly attempting to use counsel as a conduit for non-legal communications to persons

---

[8] Indeed, if such material comes into counsel's possession, they are required to return it to Guantanamo for processing in accordance with standard procedures for non-legal mail.  *See* Access Procedures §§ IV.B.5, VI.C.

[9] Respondents arguments in this regard are drawn solely from the information provided in petitioners' motion to compel and exhibits submitted in support thereof.

other than counsel.  In this situation, the Privilege Team correctly refused to review the information.

Second, petitioners contend that in September 2005 the Privilege Team initially refused to review official medical charts from Guantanamo pertaining to the weight loss of a particular detainee on the basis that the documents may have been improperly procured by petitioners' counsel.  *See* Declaration of Kristine Huskey ¶¶ 4-6.  However, there is nothing in the Protective Order or Access Procedures that would prohibit the Privilege Team from taking steps to ensure that documents submitted by habeas counsel were not improperly confiscated or stolen from Guantanamo, particularly given the stay of proceedings in these cases and the absence of ongoing discovery.  In any event, as the declaration makes clear, the Privilege Team ultimately agreed to review the medical records at a later date and determined that they were unclassified. *See id.* ¶ 6.  Furthermore, the records in question also were submitted by petitioners' counsel to the Court and respondents' counsel in a Court filing, and it was determined that the records in were unclassified[10] and properly released to the detainee at issue, a point counsel fails to mention in the declaration.  *See Al Odah v. Bush*, 02-CV-828 (CKK) (dkt no. 263) (filing of detainee medical records in support of motion for preliminary injunction).

Finally, counsel contend that the Privilege Team improperly refused to review a "Last

---

[10] With respect to pleadings and documents filed with the Court, the Protective Order contains a detailed procedure that permits the government to conduct an appropriate classification review outside of the Privilege Team context.  *See* Protective Order ¶¶ 46-48; Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Dec. 13, 2004).

-13-

Will and Testament" written by a detainee in October 2005.[11]  *See* Declaration of Kristine

Huskey ¶¶ 8-10.  Counsel, however, fail to offer any explanation why such a document is "for

the purposes of litigating" the detainee's habeas corpus case, as required by the Access

Procedures.  While a will is unquestionably a legal document, the Access Procedures were not

created to provide detainees with means to conduct, in a privileged fashion, probate matters or

other legal affairs they may have an interest in addressing during the course of their detention.

Consequently, the Privilege Team correctly refused to review the document.

      For the reasons stated above, the Privilege Team has the authority under the Protective

Order and Access Procedures to refuse to review non-legal documents and other documents

intended for purposes other than the habeas litigation.  Accordingly, petitioners' motion to

compel should be denied.

**III.     The Privilege Team Has Authority Under the Protective Order and Access Procedures To Mark Information Submitted For Review as "Protected Information."**

      In addition to seeking an order compelling the Privilege Team to conduct a classification

review of every document submitted by habeas counsel, petitioners also improperly request an

order limiting the Privilege Team's authority to mark information submitted for review as "For

Official Use Only," "FOUO," or "protected information."  Contrary to petitioners' assertions,

nothing in the Protective Order prohibits the Privilege Team from marking certain information in

this fashion.

_____

[11] The stale nature of these complaints is illustrated by the dates of these various
submissions by petitioners' counsel to the Privilege Team, some of which occurred nearly six
months ago.  In light of this fact, there is no imminent need for the Court to resolve this motion
pending guidance from the D.C. Circuit regarding the effect of the Detainee Treatment Act of
2005.

-14-

As discussed above, the Protective Order contemplates three distinct categories of information in the Guantanamo habeas litigation: unclassified, classified, and protected information. *See* Protective Order ¶¶ 9-11, 17-45. "Protected information" is information that must be treated as confidential and under seal, though not classified, in order to protect government security interests or other significant government interests.[12] *See* Protective Order ¶¶ 1, 11, 35-45; Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 10, 2004). Pursuant to the Access Procedures, the Privilege Team is specifically charged with performing an "appropriate security classification" of information submitted by habeas counsel. *See* Access Procedures § VII.A. More specifically, the Privilege Team is a security review clearinghouse established under the Protective Order primarily to conduct security reviews and to facilitate counsel-detainee access while addressing government security and other interests in the unique and unprecedented context of the Guantanamo habeas litigation. Indeed, the Access Procedures repeatedly reference the Privilege Team's authority to conduct an "appropriate security classification," a "classification determination," and a "classification review." *Id.* § VII. This type of review allows the Privilege Team to mark both classified and unclassified information with sufficient particularity to provide petitioners' counsel with appropriate guidance regarding the information in their possession. Accordingly, the Privilege Team has the authority consistent with the Protective Order and Access Procedures to mark information submitted by habeas counsel as either unclassified, classified, or protected while performing its security classification

---

[12] Examples of "protected information" designated by respondents include information that is law enforcement sensitive as well as information that implicates security and privacy protections, such as the names of certain personnel who work at Guantanamo Bay.

review of such material.

When the Privilege Team marks information as "protected information" during the classification review process, it is not, of course, an official Court-sanctioned designation that the information is properly deserving of protected status. *See* November 10, 2004 Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 10, 2004) (delineating the procedure for Court approval of protected information requests). Instead, it is respondents' understanding that the Privilege Team marks certain types of unclassified information with more specific identifying notations – such as "For Official Use Only" or "Protected Information" – merely to alert petitioners' counsel that, while the information is unclassified, it may be deserving of special status or treatment in accordance with government information classification guidelines or it is similar in nature to protected information that has previously been designated by respondents' under the Court's November 10, 2004.[13] *See supra* note 12. Therefore, the Privilege Team is simply providing petitioners' counsel with additional information about the type of unclassified information in their possession so they can handle it accordingly until the information is determined by the Court or respondents to have a different classification level, if warranted. Nothing in the Protective Order or Access Procedures prohibits the Privilege Team from marking information in this fashion.

In sum, the Privilege Team has authority under both the Protective Order and Access

---

[13] The Privilege Team's memorandum, *see* Petitioner's Motion to Compel, Exhibit I, also makes clear that the FOUO designation can be simply a proxy used by the Privilege Team to indicate information may fal in the "protected" category.

Procedures to mark information submitted for review as "protected information."[14]

## CONCLUSION

For the reasons stated above, petitioner's emergency motion for injunction against further

torture should be denied.

Dated: March 8, 2006                        Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            DOUGLAS N. LETTER
                                            Terrorism Litigation Counsel

                                            ___/s/ Andrew I. Warden_____
                                            JOSEPH H. HUNT (D.C. Bar No. 431134)
                                            VINCENT M. GARVEY (D.C. Bar No. 127191)

_____

[14] Unrelated to their motion to compel, petitioners assert various stale complaints about the timing of legal mail delivery to and from Guantanamo.  *See* Petitioners' Motion to Compel at 8-9.  While there were some significant delays associated with a number of legal mail packages sent from Guantanamo this past summer, such delays were due to the inadvertent use by certain mailroom personnel at Guantanamo of an incorrect zip code that resulted in packages not being delivered in a timely fashion to the Court Security Officers ("CSOs") responsible for distribution of detainee legal mail to counsel in the secure facility. Once the problem was discovered in August 2005, the CSOs and respondents' counsel were able to track down and retrieve the misrouted packages for delivery, albeit significantly delayed, to petitioners' counsel. Prophylactic steps, in cooperation with the CSOs, have been take to avoid a repeat of the inadvertent error in the future.  In any event, petitioners' fail to mention a pilot program designed to provide faster and more efficient delivery of legal mail delivery to represented detainees via FedEx and Lynx Air that has been initiated over the past several months.

Petitioners also reference another stale incident in December 2004 (not 2005, as cited in their motion) involving a single package of interview notes that did not arrive at the security facility.  Respondents a year ago provided the assigned Judge in that case – Judge Walton – with an explanation of that unfortunate event in response to petitioners' motion to compel.  *See* Respondents' Opposition to Motion to Compel, *Almurbati v. Bush*, 05-CV-1227 (RBW) (dkt. no. 81).  Judge Walton has denied all pending motions without prejudice, including the aforementioned motion to compel, until the D.C. Circuit resolves the jurisdictional issues created by the Detainee Treatment Act of 2005.  *See* Order, *Almurbati v. Bush*, 05-CV-1227 (RBW) (dkt. no. 149).

TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN (IN Bar No. 23840-49)
NICHOLAS J. PATTERSON
EDWARD H. WHITE
MARC A. PEREZ
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents

-18-