*CLEARED FOR PUBLIC FILING BY CSO*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ABDUL HADI OMER MAHMOUD FARAJ,**

    *Petitioner,*

    **v.**

**GEORGE W. BUSH,** *et al.,*

    *Respondents.*

**Case No. 1:05CV01490 (PLF)**

## PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT 30-DAYS ADVANCE NOTICE OF ANY <u>PROPOSED REMOVAL OF PETITIONER FROM DETENTION FACILITIES</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. §1651, Petitioner, Abdul Hadi Omer Mahmoud Faraj, respectfully moves the Court to issue a preliminary injunction requiring Respondents to provide counsel for Petitioner and the Court with thirty days advance notice of any proposed removal of Petitioner from the Guantánamo Bay Naval Base detention facilities in Cuba. The grounds for this motion are more fully set forth in the accompanying memorandum in support hereof. Pursuant to Local Rule 7.1(m), counsel for Petitioner has conferred with counsel for Respondents regarding this motion, but they have been unable to reach agreement.

Respectfully submitted,

GARVEY SCHUBERT BARER

By _Robert C. Weaver Jr. (By EVG)_
    Robert C. Weaver, Jr. OSB #80135
    Samuel C. Kauffman, OSB #94352
    GARVEY SCHUBERT BARER
    Eleventh Floor
    121 SW Morrison St.
    Portland, OR 97204
    Tel: (503) 228-3939
    Fax: (503) 226-0259

By _____
    Eldon V.C. Greenberg
    D.C. Bar #159558
    GARVEY SCHUBERT BARER
    Fifth Floor
    1000 Potomac Street, N.W.
    Washington, DC 20007
    Tel: (202) 965-7880
    Fax: (202) 965-1729

    Attorneys for Petitioner

Dated: July 10, 2006

*CLEARED FOR PUBLIC FILING BY CSO*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ABDUL HADI OMER MAHMOUD FARAJ,**

    *Petitioner,*

    **v.**

**GEORGE W. BUSH,** *et al.,*

    *Respondents.*

**Case No. 1:05CV01490 (PLF)**

---

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION
REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR
PETITIONER AND THE COURT 30-DAYS ADVANCE NOTICE OF ANY
PROPOSED REMOVAL OF PETITIONER FROM DETENTION FACILITIES**

Petitioner, Abdul Hadi Omer Mahmoud Faraj, submits this memorandum in support of his

motion for a preliminary injunction requiring Respondents to provide counsel for Petitioner and the

Court 30-days advance notice of any proposed removal of Petitioner from the Guantánamo Bay

detention facilities.  The Supreme Court's decision the week before last in *Hamdan v. Rumsfeld*, 548

U.S. __ (2006), makes it increasingly probable that Respondents will be considering the possibility

of rendition, perhaps in the more or less immediate future, of many Guantánamo inmates, including

Petitioner.  *See* Josh White, *Hurdle to Closing Guantanamo: Where to Put Inmates*, WASHINGTON

POST, A8 (July 2, 2006) (attached as Exhibit A); *The U.S. 'Wants to End Guantanamo,'* BBC NEWS

ONLINE (June 21, 2006) (available at http://news.bbc.co.uk/2/hi/americas/5102528.stm, attached as

Exhibit B) ("US President George W Bush has said he would like to close the US prison camp at Guantanamo Bay and send many detainees back to their home countries."); President George W. Bush, Press Release from the Office of the Press Secretary (June 14, 2006) (available at http://www.whitehouse.gov/news/releases/2006/06/20060614.html, attached as Exhibit C) ("Part of closing Guantanamo is to send some folks back home, like we've been doing. And the State Department is in the process of encouraging countries to take the folks back."). In these circumstances, notwithstanding the stay entered in this case on September 26, 2005, it is now appropriate for the Court to consider the need for a preliminary injunction requiring 30-days advance notice of any proposed removal of Petitioner from Guantánamo.[1] The imposition on Respondents of an obligation to provide such notice has become common in detainee *habeas* cases and is essential to protect Petitioner's rights while his case is pending.

### Argument

This Court in *Al-Wazan v. Bush,* No. 05-CV-0329 (PLF) (D.D.C. April 1, 2005) (Dkt. No. 19), *Al-Shihry v. Bush*, No. 05-CV-0490 (PLF) (D.D.C. April 20, 2005) (Dkt. No. 17), and *Akhtiar v. Bush*, 05-CV-1635 (PLF) (D.D.C. Sept. 16, 2005) (Dkt. No. 10) ordered Respondents to provide counsel and the Court with 30-days advance notice before removing *habeas* petitioners from Guantánamo. Other Judges of this Court, in numerous other cases, have entered similar orders. Some of those Judges, including this Court, have imposed this notice requirement by means of a

---

[1] Petitioner, in his response, dated September 20, 2005, to the Government's motion to stay this case, did ask that a 30-day notice requirement be imposed as a condition of the stay. However, this issue was not addressed in the stay order, and, since Petitioner had not filed a motion for such relief, the Court had no occasion to formally rule on an advance notice request. Petitioner believes that this motion falls within the emergency exception to the stay order.

preliminary injunction.[2]  Others have required advance notice as a condition of issuing a stay.[3]  The

mechanism is not material, but the result is of critical importance.  Thus, it is appropriate for the

Court in this case to impose a 30-day advance notice requirement at this time.

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue

injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C.

Cir. 1996); *Environmental Def. Fund v. EPA*, 485 F.2d 780, 784 n. 2 (D.C. Cir. 1973).  Petitioner's

request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status

quo between the parties pending a final determination of the merits of the action." 13 Moore's

Federal Practice 3d, § 65.20 (2004).

In determining whether to award preliminary injunctive relief, courts weigh four factors, each

of which favors granting Petitioner's request in this matter: (1) Petitioner will suffer irreparable harm

if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted;

---

[2]  *See, e.g., Al-Adahi v. Bush*, No. 05-CV-00280 (GK) (D.D.C. April 28, 2005) (Dkt. No. 34); *Al Joudi v. Bush*, No. 05-CV-00301 (GK) (D.D.C. April 4, 2005) (Dkt. No. 19); *Al-Marri v. Bush*, No. 04-CV-2035 (GK) (D.D.C. April 4, 2005) (Dkt. No. 33); *Al-Mohammed v. Bush*, No. 05-CV-00247 (HHK) (D.D.C. March 30, 2005) (Dkt. No. 18); *Abdah v. Bush*, No. 04-CV-01254 (HHK) (D.D.C. March 29, 2005) (Dkt. No. 147).

[3]  *See, e.g., Al-Hela v. Bush*, No. 05-CV-01048 (RMU) (D.D.C. June 3, 2005) (Dkt. No. 12); *Kurnaz v. Bush*, No. 04-CV-1135 (ESH) (D.D.C. April 12, 2005) (Dkt. No. 96); *Ameziane v. Bush*, No. 05-CV-00392 (ESH) (D.D.C. April 12, 2005) (Dkt. No. 12); *Abdullah v. Bush*, No. 05-CV-00023 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 24); *Al Rashaidan v. Bush*, No. 05-CV-00586 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 10); *El-Banna v. Bush*, No. 04-CV-1144 (RWR) (D.D.C. April 8, 2005) (Dkt. No. 141); *Tumani v. Bush*, No. 5-CV-00526 (RMU) (D.D.C. April 6, 2005) (Dkt. No. 5); *Qayed v. Bush*, No. 05-CV-00454 (RMU) (D.D.C. April 6, 2005) (Dkt. No. 4); *Al-Oshan v. Bush*, No. 05-CV-00520 (RMU) (D.D.C. March 31, 2005) (Dkt. No. 12); *Al Daini v. Bush*, No. 05-CV-634 (RWR) (D.D.C. June 5, 2005) (Dkt. No. 10); *Zalita v. Bush*, No. 05-CV-1220 (RMU) (D.D.C. July 25, 2005) (Dkt. No. 3); *Al-Asadi v. Bush*, No. 05-CV-2197 (HHK) (D.D.C. Nov. 29, 2005) (Dkt. No. 18); *Ali Ahmed v. Bush*, No. 05-CV-1678 (GK) (D.D.C. Dec. 7, 2005) (Dkt. No. 18); *Al-Mithali v. Bush*, No. 05-CV-2186 (ESH) (D.D.C. Dec. 20, 2005) (Dkt. No. 22); *Rabbani v. Bush*, No. 05-CV-1607 (RMU) (D.D.C. June 16, 2006) (Dkt. No. 19); *Hamoud v. Bush*, No. 05-CV-01894 (RWR) (D.D.C. July 5, 2006) (Dkt. No. 23).

(3) Petitioner is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention, abuse, and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 and n. 2 (D.C. Cir. 2001); *Serono Labs, Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Respondents have made it abundantly clear that they intend to transfer many of the detainees currently held at Guantánamo to their home countries or other countries for continued detention. *See, e.g.,* Neil A. Lewis, *Guantánamo Detention Site Is Being Transformed, U.S. Says*, WASHINGTON POST, (August 5, 2005) (attached as Exhibit D); White, *supra*; BBC NEWS ONLINE, *supra*; President George W. Bush, *supra*. Although counsel has no information that Petitioner, a Syrian national, or any of the other Syrian detainees are being considered for such a transfer, Petitioner stands to suffer immeasurable and irreparable harm -- from indefinite incarceration to torture to possible death -- at the hands of a foreign government such as Syria if such a transfer occurs.

During our interviews with Mr. Faraj at Guantánamo, he expressed grave concerns about being returned to Syria. In his view, "Syria is not a good place to return to," because he might be subject to persecution, imprisonment, torture and even death there. The reasons for Mr. Faraj's fears about returning to Syria are well-founded and readily understandable.

As documented in the February 28, 2005 U.S. Department of State Report on Human Rights Practices in Syria (a copy of which is attached as Exhibit E), Syria's human rights situation is "poor," and "the Government continue[s] to commit numerous serious abuses." These include "the use of torture in detention, which at times resulted in death; poor prison conditions; arbitrary arrest and detention; prolonged detention without trial; fundamentally unfair trials in the security courts; and infringement on privacy rights." Of particular concern, Amnesty International reported in 2005

- 4 -

that "[d]ozens of Syrians were reportedly arrested on their return from exile," even when they had returned with the permission of the Syrian authorities, often because of "suspected…personal or family links with the Muslim brotherhood," and at least two men had died in custody. A copy of the Amnesty International report is attached as Exhibit F); *see also* Jane Mayer, *Outsourcing Torture*, THE NEW YORKER, Feb. 14, 2005 (available at http://www.newyorker.com/fact/content/?050214fa_fact6) (describing Syrian officials' torture of a Syrian-born Canadian national rendered to them by the U.S. Government).

Emergency rule, imposed in 1963, remains in effect, despite public calls by Syrian reformers for its repeal. The government strictly limits freedom of expression, association, and assembly. Thousands of political prisoners, many of them members of the banned Muslim Brotherhood and the Communist Party, remain in detention. The London-based Syrian Human Rights Committee estimates that about four thousand political prisoners remain in detention in Syria. The authorities refuse to divulge information regarding numbers or names of people in detention on political or security-related charges. Moreover, 2005 passed without any government acknowledgment that its security forces had "disappeared" an estimated seventeen thousand persons—Lebanese citizens and stateless Palestinians—in Lebanon in the early 1990s. Many of these people are known or believed to be imprisoned in Syria. The government has further targeted students whom it suspected of having ties with Islamist groups. In March 2005, for example, the government arrested over forty students of Tishrin University, in Latakia, for being affiliated with an Islamist movement called Sunna` al-Hayat (Makers of Life). At least some of the detained students were reportedly tortured, according to the Damascus-based Human Rights Association in Syria. Finally, in recent years, dozens of people suspected of being connected to the Muslim Brotherhood have been arrested upon their voluntary or forced return home from exile. Syrian authorities arrested `Abd al-Sitar Qattan,

- 5 -

for example, on November 23, 2004, upon his return from Saudi Arabia, and reportedly prosecuted him before the Supreme State Security Court under Law 49 (1980), which states, in part, that affiliation with the Muslim Brotherhood is punishable by death. In these circumstances, Mr. Faraj, who unfortunately may be regarded as an Islamic fundamentalist simply by virtue of his incarceration in Guantanamo, and who has been branded as a "terrorist" by the U.S. Government without regard to the particular facts of his situation, would face a very problematic, and potentially even life-threatening, future, should be repatriated to Syria.

In addition, transfer to another country, even if for continued imprisonment alone, would effectively deprive Petitioner of his ability to obtain meaningful relief after this Court adjudicates the legality of his detention. Accordingly, a 30-day advance notice requirement would prevent Respondents from essentially removing Petitioner from this Court's jurisdiction and frustrating judicial review. As Judge Urbina recently stated, "[T]he court cannot allow such a scenario to unfold; the court will 'guard against depriving the processes of justice of their suppleness to adapt to varying conditions.'" *Rabbani v. Bush*, No. 05-CV-01607 (RMU) (D.D.C. June 16, 2006) (Dkt. No. 19) (slip op. at 3), citing *Landis v. North American Co.*, 299 U.S. 248, 256 (1936).

In contrast to the harm faced by Petitioner, Respondents, who have already held Petitioner and other detainees for more than four years, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo. Respondents can suffer no conceivable harm from complying with such a request. Indeed, Judge Kessler has noted that such relief is "concrete, narrow, and minimally burdensome" and that "[t]he requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper. Such a minimal consequence does not outweigh the imminent threats of

- 6 -

indefinite detention, potential torture, and the elimination of [the petitioner's] claims." *Al Joudi v. Bush*, No. 05-CV-0301 (GK) (D.D.C. Apr. 4, 2005) (Dkt. No. 19) (slip op. at 14, 15).

Petitioner is also likely to succeed on the merits of his claims. Petitioner has properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 542 U.S. 466 (2004). One District Court has held in several related cases that Guantánamo detainees such as Petitioner have actionable *habeas corpus* claims based upon alleged violations of the Due Process Clause of the Constitution and the Geneva Conventions, *see In re Guantánamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005) (Green, J.); the appeals from this ruling and from a contrary ruling of Judge Leon currently pending in the D.C. Circuit Court of Appeals in *Al-Odah v. United States* (Nos. 05-5064, 05-5095-05-5116) and *Boumediene v. Bush* (Nos. 05-5062 and 05-5063) unquestionably present substantial issues relating to the extent of detainee rights under the Constitution and other laws; and the Supreme Court in *Hamdan* has ruled that Common Article 3 of the Geneva Conventions is applicable in the context of detainees brought before military commissions. As this Circuit has made clear, as long as a movant has made a "substantial case on the merits," the Court may find a stay appropriate on balance of all four factors, "even though its own approach may be contrary to the movant's view of the merits." *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843-845 (D.C. Cir. 1977). Particularly in this case, where removal of Petitioner to a country that would afford none of the protections that may granted and recognized by U.S. law could have the effect of depriving Petitioner of his fundamental human rights and violate basic international legal norms, the questions on the merits are more than "substantial" enough to warrant entry of a preliminary injunction.

Finally, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioner from Guantánamo. No matter how satisfied the

- 7 -

Executive Branch may be that its actions are lawful, the public good requires that a Federal litigant --

properly before the Court and represented by counsel -- be provided a meaningful opportunity to

contest his transfer into the hands of those who might torture him or detain him indefinitely.

### Conclusion

For the foregoing reasons, Petitioner respectfully submits that the Court should grant this

motion and enter an order requiring Respondents to provide counsel and the Court thirty (30) days

advance notice of any proposed transfer of Petitioner from the Guantánamo Bay detention facilities.

Respectfully submitted,

GARVEY SCHUBERT BARER

By _Robert C. Weaver Jr (By Eur)_

Robert C. Weaver, Jr. OSB #80135
Samuel C. Kauffman, OSB #94352
GARVEY SCHUBERT BARER
Eleventh Floor
121 SW Morrison St.
Portland, OR 97204
Tel: (503) 228-3939
Fax: (503) 226-0259

By _____

Eldon V.C. Greenberg
D.C. Bar #159558
GARVEY SCHUBERT BARER
Fifth Floor
1000 Potomac Street, N.W.
Washington, DC 20007
Tel: (202) 965-7880
Fax: (202) 965-1729

Attorneys for Petitioner

Dated: July 10, 2006

- 8 -