*CLEARED FOR PUBLIC FILING BY THE CSO*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ABDUL HADI OMER MAHMOUD FARAJ,**

*Petitioner,*

v.                                                                      Case No. 1:05CV01490 (PLF)

**GEORGE W. BUSH,** *et al.,*

*Respondents.*

**PETITIONER'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION FOR RETURN OF LEGAL PAPERS**

Petitioner submits this reply memorandum in support of his motion for return of legal papers, filed July 21, 2006. In the opposition papers filed by the Government in all detainee cases on July 28, 2006 (hereinafter "Opp."), Respondents continue to insist that the Government's unilateral seizure of almost all attorney-client materials held by detainees at the Guantánamo Naval Base and its after-the-fact request for a Government "filter team" to review these materials and make privilege determinations are both reasonable and legally sound. They are neither. Therefore, Petitioner's motion should be granted.

**ARGUMENT**

**I.    There Has Been an Unlawful Abrogation of Attorney-Client Privilege.**

The Government attempts to obscure the fact that it acted unlawfully, arguing that because the seizure is only "temporary" and because Naval Criminal Investigative Service ("NCIS") investigators simply "reviewed" or "scanned" rather than "read" legal materials, there has been no abrogation of the right to counsel access or the attorney-client privilege whatsoever.

*See* Opp. at 4-5. The Government's argument ignores the fact that, regardless of the ultimate outcome of this matter, detainee confidence in the existence of the attorney-client privilege has likely been severely damaged by the Government's actions. The Court's Order of October 20, 2004, which prohibited "unilateral" interference with counsel access and attorney-client communications by the Government,[1] served to protect that fragile confidence. By unilaterally seizing attorney-client communications and legal materials, no matter how "temporary" the seizure may ultimately be or whether these materials were "reviewed," "scanned" or "read," the Government has violated that Order, and the obvious consequence of the Government's actions is to engender a lack of faith on the part of detainees in their ability to work with their counsel confidentially. The Government's action cannot be sanctioned by the Court, and the best way to begin to remedy this breach of trust is to return the seized materials immediately, as requested in Petitioner's motion.

## II. Guantánamo Officials Cannot be Permitted to Take Whatever Action They Deem Fit to Address Perceived Security Issues, Regardless of Its Legality.

Petitioner's motion is warranted because the Government cannot be permitted to take whatever actions it deems appropriate, regardless of the lawfulness of those actions, even where it perceives a threat to prison security.

In their Opposition, Respondents rely heavily on the line of prison regulation cases beginning with *Bell v. Wolfish*, 441 U.S. 520 (1979), which they argue sets a very liberal standard – essentially, pure deference – for what measures prison authorities may take to address security issues. Opp. at 6-8. However, these cases, while often applicable to a policy analysis in the standard prison context, are unable to bear the heavy burden that the Government would

---

[1] *Al Odah v. United* States, 346 F. Supp. 2d 1, 5 (D.D.C. 2004).

place on them. The contexts of these cases were entirely different, and not one of them ratified any infringement upon a prisoner's counsel access rights or the attorney-client privilege.

In *Bell v. Wolfish*, the Supreme Court considered the rights of pre-trial detainees. 441 U.S. 520, 523, 536 (1979). Respondents note that the Court ultimately allowed prison officials to conduct cell and personal searches of detainees. Opp. at 6. However, the Court emphasized that that these were persons "charged with a crime," who, while not yet found guilty, had nevertheless received a "judicial determination of probable cause." 441 U.S. at 523, 526. Here, of course, Petitioner has never been charged with a crime, and yet has remained confined at Guantánamo for more than four years. Unlike pre-trial detainees, the conditions imposed upon Petitioner, which already include being subject to constant cell and personal searches, have no end in sight. Furthermore, as opposed to the policies upheld in *Bell*, which in fact mainly concerned double-bunking and the receipt of hardback books, here the Government would strike at the very core of the fundamental attorney-client privilege.

*Hudson v. Palmer* and *Block v. Rutherford* are also off the mark. In *Hudson*, the Supreme Court merely permitted prison officials to conduct "shakedown" searches. In *Block*, addressing a pre-trial detainee's right to receive family visits and observe cell searches, the Court emphasized that it would be "at most . . . [a] few days or weeks" during which detainees would remain confined while awaiting trial, and the "ease with which one can obtain release on bail or personal recognizance." 468 U.S. 576, 583 (1984). Clearly then, *Hudson* and *Block* are not applicable to this situation. As noted above, Petitioner has been imprisoned indefinitely without charges; "bail" and "personal recognizance" are foreign concepts in Guantánamo; and Petitioner has been subject to full body and cell searches at will since he arrived at the prison.

3

Finally, *Turner v. Safley* dealt with a regulation limiting inmate correspondence between correctional institutions and a restriction on prisoner marriage. 482 U.S. 78 (1987). In *Turner*, the Court created a test for polices infringing on the constitutional rights of inmates; the policy must be reasonably related to a legitimate penal interest. 482 U.S. at 89. The Court upheld the restrictions at issue, grounding their rationale in security concerns and the lack of alternative solutions. *Id.* at 84, 93. The test created in *Turner* was later applied in *Goff v. Nix*, 113 F.3d 887 (8th Cir. 1997), which dealt with, *inter alia*, the handling of prisoner legal materials when a "jailhouse lawyer" is transferred to a different facility.

However, the test announced in *Turner* and utilized in *Goff* simply does not apply to Guantánamo detainees. It is illogical to compare federal or state prisoners, who have been tried in a proceeding affording full due process rights and found guilty, with Petitioner, who has not even been charged with a crime and probably never will be. Furthermore, the restrictions at issue in *Turner* dealt only with a prisoner's ability to communicate with non-attorney third parties; here, detainees are denied their established right to maintain the privacy of privileged communications with counsel. Although *Goff* did address the treatment of legal materials, the Court in fact upheld the district court's injunction prohibiting prison officials from withholding or destroying them, noting that "the taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts," and often will, in fact, rise to that level. 133 F.3d at 892. Whereas in *Turner* there was no alternative solution to the problem at hand, here alternatives surely exist to the process proposed by the Government.

In sum, the cases upon which the Government relies do not support the proposition that the Government should have free rein over every aspect of detention at Guantánamo Bay, including detainees' access to their counsel, because of alleged security concerns.

4

**III.     The Government's Request to Retain and Review Seized Materials is Factually Unjustified.**

The seizure of detainees' materials and the requested retention and review of those materials are unjustified because the Government has failed to make any individualized showing of why there was a need to seize attorney-client materials, let alone retain and review them, when prisoners may have had no interaction at all with the suicide victims because they may not have even been in the same camp

The Government attempts to bypass the dearth of support for its position by misstating counsel's demand for an individualized factual showing as an attempt to apply a probable cause standard to the Government's behavior at Guantánamo, and it again cites *Goff v. Nix*, 113 F.3d 887 (8th Cir. 1997), this time as demonstrating that no such showing is necessary. Opp. at 14-15. However, as discussed above, although *Goff* did concern the withholding of legal materials, the Court ultimately enjoined the practice and only permitted prison officials to scan legal materials for contraband before returning them to the prisoner, *id.* at 892, which is exactly what the Privilege Team is already permitted to do with legal mail in this case before it is sent to detainees. Prison officials scanning for contraband are in no way equivalent to a Government filter team working in conjunction with government litigators (the proposed "Filter Litigation Team") and military investigators.

The cases cited in Respondents' own Motion[2] highlight a need for, if not probable cause, some particularized showing linking the individual to the cause for infringement of the right at issue, in this case the right to counsel and the accompanying protections to which this Court

---

[2] *See, e.g.,* Motion at 15 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989) (where the Court held that, in order for even an *in camera* review of potentially privileged materials – even those that have been lawfully seized – to be justified, there must first be a "showing of a factual basis adequate to support a good faith belief by a reasonable person … that *in camera* review of the materials may reveal evidence" establishing that the privilege does not apply)).

5

determined detainees are entitled. The Government cannot overcome the lack of such a showing by simply citing repeatedly the facts of the suicides, the suicide notes, and the previous struggle between guards and prisoners in that same camp. At most, these facts establish a potential need to search the materials of a portion of the detainees held in the same camp. Counsel for Petitioner do not deny the importance of these matters. However, Respondents have utterly failed to make an individualized showing that would validate the mass seizure, impoundment, and review of attorney-client materials and justify the denial of Petitioner's request for relief.

**IV.     The Proposed "Filter Team" is not the Appropriate Entity to Conduct a Privilege Review of Detainee Materials.**

In any event, even if this Court were to determine that some review of the seized materials is necessary, the Government proposed-and-composed "Filter Team" is not the appropriate entity to conduct such a review.

Government "filter" or "taint" teams of this kind have been rejected by Courts on numerous occasions. Indeed, as one Court has stated, the use of a Government taint team is "unwise," "constitutes a *per se* intentional intrusion" on the privilege, and "creates an appearance of unfairness." *United States v. Neill*, 952 F. Supp. 834, 841 & n. 14 (D.D.C. 1997). The Government appears to think that such fundamental flaws should be trumped by considerations of time, efficiency, and cost, citing *Black v. United States,* 172 F.R.D. 511, 514 n.4 (S.D. Fla. 1997), where the Court expressed concern over the duration and cost of special master review procedures in other cases (but ultimately, as the Government admits, adopted a procedure for court review of the materials). *See* Opp. at 22-23. Here, however, where the Government alone is responsible for unlawfully seizing detainee materials before consulting the Court, the Government's complaints of logistical difficulty must ultimately be trumped by considerations of lawfulness.

6

The D.C. Circuit, on the same day that the Government filed its Opposition, addressed precisely this issue, rejecting a Government-proposed plan to create a Government "filter team" to review potentially privileged documents seized in the investigation of Congressman William J. Jefferson. *United States v. Rayburn House Office Bld'g, Room No. 2113, Washington, D.C. 20515*, No. 06-3105, slip op. at 1-2 (D.C. Cir. July 28, 2006). The Government wanted its filter team to have the power to determine "first whether each document was responsive, and second whether it fell within the purview" of a privilege. *Id*. at 3. Any document determined likely to be privileged would then be provided to defense counsel and the district court, which would make a final determination. *Id*. at 3-4. However, any document the filter team initially determined to be unprivileged would be immediately provided for use in the investigation. *Id*. at 4. The D.C. Circuit rejected these proposed procedures, instead mandating that a judicial officer or special master would provide a copy of all seized documents *to the Congressman*, the Congressman would then review these documents and submit any claims of privilege to the district court, and the court would then review Jefferson's claims of privilege *in camera*. *Id*. at 1. Here, where the proposed review procedures are nearly identical in many ways, but even less favorable to the non-governmental party, they must likewise be rejected.

Plainly the Government, which is unlikely to take an expansive view of the attorney-client privilege, cannot be granted the authority to review and make privilege determinations regarding the seized materials. There is no reason for the seized materials to remain in the Government's hands any longer. Therefore, as requested by Petitioner, the Court should order the Government to immediately turn over all seized materials to counsel or return them to Petitioner.

## CONCLUSION

For all the reasons set out above and in his opening memorandum, Petitioner respectfully submits that his motion for return of legal papers should be granted.

Respectfully submitted,

GARVEY SCHUBERT BARER

By /s/ Robert C. Weaver, Jr.
    Robert C. Weaver, Jr. OSB #80135
    Samuel C. Kauffman, OSB #94352
    GARVEY SCHUBERT BARER
    Eleventh Floor
    121 SW Morrison St.
    Portland, OR 97204
    Tel: (503) 228-3939
    Fax: (503) 226-0259

By /s/ Eldon V.C. Greenberg
    Eldon V.C. Greenberg
    D.C. Bar #159558
    GARVEY SCHUBERT BARER
    Fifth Floor
    1000 Potomac Street, N.W.
    Washington, DC 20007
    Tel: (202) 965-7880
    Fax: (202) 965-1729

Attorneys for Petitioner

Dated: August 9, 2006