*CLEARED FOR PUBLIC FILING BY THE CSO*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL HADI OMER MAHMOUD FARAJ,<br><br>*Petitioner,*<br><br>v.<br><br>GEORGE W. BUSH, *et al.,*<br><br>*Respondents.* | Case No. 1:05CV01490 (PLF) |

## PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF HIS MOTION TO STAY AND HOLD IN ABEYANCE

Since Petitioner filed his motion to "stay and abey" on April 11, 2007, and Respondents filed their motion to dismiss on April 19, 2007, it has become increasingly clear that the fate of Petitioner's *habeas corpus* case likely lies not with this Court but rather with the Court of Appeals or the Supreme Court. Indeed, the more or less imminent rulings of the higher courts may well be controlling with respect to the disposition of this action. In the circumstances, Petitioner suggests that the proper course is for the Court to defer consideration of Respondents' motion to dismiss and Petitioner's motion to stay and abey, until the D.C. Circuit and the Supreme Court determine how these actions should be handled in light of the Supreme Court's denial of certiorari in *Boumediene v. Bush* and *Al Odah v. United States*, 127 S. Ct. 1478 (2007). If, however, the Court deems it appropriate to proceed to the merits of the pending motions, Petitioner's motion should be granted and Respondents' motion should be denied.

Most significantly, as represented in Petitioner's stay and abey motion (at p.2, n. 1), on April 20, 2007, Petitioner, in the consolidated "30-day notice order" appeals (*Al-Ginco v. Bush*, Nos. 06-5191, *et al.*, including Petitioner's case, *Faraj v. Bush*, No. 06-5320), filed an extensive opposition to the Government's motion to vacate the District Court's order *and* dismiss the underlying *habeas* petition. A copy of these opposition papers is attached as Exhibit A and incorporated herein by reference. A quick review of these papers reveals that many, if not all, the issues with respect to the future of this *habeas* action are joined in the Court of Appeals. There is thus no reason for this Court to resolve either Petitioner's or Respondents' motion at this time and every reason to await the Court of Appeals' action.

At the same time, there have been relevant developments in the cases in which certiorari was denied on April 2, which may also bear on this Court's disposition of the pending motions. Following the Supreme Court's denial of certiorari, the petitioners filed in the D.C. Circuit (1) motions in *Al Odah v. United States*, No. 05-1564, to stay the mandate and to govern the appeal, and (2) motions in *Abdah v. Bush*, No. 05-5127, and *Abdah v. Bush*, No. 05-5224, to continue to hold those appeals in abeyance, to govern those appeals, and to direct the lower courts not to dismiss these actions and to reinstate those already dismissed.[1] The Government has filed oppositions to the motions in both *Al Odah* and *Abdah*, but the D.C. Circuit has not yet acted on the pending motions.[2]

---

[1] In *Abdah*, No. 05-5127, the Government appealed the lower court's order requiring the Government to provide counsel with unredacted records of their clients' Combatant Status Review Tribunal proceedings. In *Abdah*, No. 05-5224, the Government appealed the lower court's order requiring the Government to provide counsel with advance notice of proposed transfers. The D.C. Circuit held both *Abdah* appeals in abeyance pending disposition of the *Al Odah* appeal.

[2] The petitioners in those cases have further lodged in the Supreme Court an emergency application to stay the mandate in *Al Odah*, to be filed if the D.C. Circuit denies the petitioners' motions to stay and to govern. Applications to suspend the order denying certiorari in *Boumediene* and to extend the time in

2

The disposition of the various motions and applications by the D.C. Circuit and the Supreme Court appears likely to clarify how this Court is to handle Petitioner's case. Until those courts provide such guidance, consideration of Respondents' motion to dismiss and Petitioner's motion to stay and hold in abeyance would be premature.

If, however, the Court determines to proceed to the merits, Respondents' arguments for dismissal and against the "stay and abey" procedure should be rejected. Staying the *habeas* proceeding pending Petitioner's exhaustion of his remedies is both consistent with prevailing Supreme Court authority and essential to preserve the status quo.

Dismissal for lack of subject-matter jurisdiction, as urged by Respondents, is proper only when the Federal claim is frivolous or foreclosed by prior decisions of the Supreme Court, and the Circuit Court's split decision in *Boumediene v. Bush*, and the split commentary from Supreme Court Justices on the denial of certiorari in that case, establish that the issues involved are substantial and that the Supreme Court has *not* decided the important questions that were deferred pending exhaustion of available remedies, *e.g.*, whether review under the Detainee Treatment Act, Pub. L. No. 109-148, 119 Stat. 2680 (the "DTA"), is coextensive with traditional *habeas* or whether Congress has unconstitutionally suspended the writ.. 476 F.3d 981 (D.C. Cir.), *cert. denied*, 127 S. Ct. 1478 (2007).

As Justices Stevens and Kennedy made clear on the denial of certiorari in *Boumediene*, that denial "does not constitute an expression of any opinion on the merits." *Boumediene v. Bush*, 127 S. Ct. at 1478. Justices Stevens and Kennedy cited *Ex Parte Hawk*, 321 U.S. 114 (1944) (*per curiam*) in their concurring statement, expressly stating that "[d]espite the obvious

---

which to file petitions for rehearing were denied by Chief Justice Roberts on April 26, 2007. 500 U.S. ___ (2007).

3

importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies.

The citation to *Hawk* is telling. In that case, the petition for Federal *habeas corpus* relief was filed under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court." 321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court and so preserved for appellate and Supreme Court review, if necessary.

Respondents' primary reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question does not advance their cause. Indeed, Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. The Supreme Court underscored, "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (emphasis added)). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits, and here the jurisdictional issues are obviously not frivolous: the courts have been split on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion in the D.C. Circuit, resulting in the three-way fracture in the

*Boumediene* denial of certiorari. Thus, far from supporting their position, the main case upon which Respondents rely establishes that the motion to dismiss should be denied while remedies are exhausted.³

Ultimately, until the Supreme Court has spoken, this Court retains the power to decide its own jurisdiction in the first instance. *See Kircher v. Putnam Trust Funds, et al.*, 126 S. Ct. 2145, 2155 (2006); *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Petitioner's habeas *corpus rights* are far from finally decided: the Supreme Court has yet to speak on the merits. Questions regarding the suspension and elimination of the writ of *habeas corpus* require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus"). The *Boumediene* statement on certiorari clearly sets out, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the *habeas corpus* claims. Further, the Court stated that, in the interim, the Government should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id.* By maintaining the present case in the District

---

³ Respondents attempt, but fail, effectively to distinguish *Rhines v. Weber*, 544 U.S. 269 (2005), upon which Petitioner relies. The exhaustion required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*. Respondents are wrong that *Rhines* is limited to instances where a failure to stay would result in running of the statute of limitations applicable to the petition. *Rhines'* holding was not contingent on the running of the limitations period but more broadly stands for the proposition that a stay is appropriate to protect a petitioner from impairment of the exercise of his *habeas corpus* rights in the future. The potential procedural obstacles facing detainees in Guantánamo cut off from contact with their lawyers in renewing future *habeas* rights are no less severe than the procedural obstacles dismissal would have created in *Rhines*. *Rhines* is thus controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id.*

The Government's position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene* opinion states the current law of the Circuit, the ruling does nothing to impair Petitioner's rights to exhaust his remedies while this Court preserves the status quo.[4]

In sum, Respondents' motion prejudges Petitioner's case and would constitute exactly the type of prejudice to Petitioner's ability to litigate that Justices Kennedy and Stevens warned that the courts should guard against. Thus, should the Court reach the merits of the pending motions, it should not decide dispositive questions, and so dismiss the case, while the efficacy of the DTA remedies is being determined.[5] Instead, it should follow the stay-and-abey norm

---

[4] The Government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C.Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the Circuit, depriving the lower courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The Government cites a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the Court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

[5] While the merits are stayed pending exhaustion and during post-exhaustion litigation, this Court has the authority to maintain the supervisory orders this Court has entered on such matters as access to counsel and the 30-day transfer notice. *United States v. Mine Workers of America*, 330 U.S. 258, 290-91 (1947); *In re President and Directors and Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964). Contrary to Respondents' argument, moreover, Section 7(a) of the Military Commissions Act of 2006, Pub. L. No. 106-366, 120 Stat. 2600 (the "MCA"), amending 28 U.S.C. § 2241(e)(2), does not precludes the Court's involvement regarding any matter related to the "transfer . . . of any enemy combatant" and thereby preclude 30-day advance notice orders. The provision in question only removes jurisdiction over "any . . . *action* against the United States or its agents" (emphasis added) related to the transfer of an enemy combatant. This is not such action. The jurisdictional restriction of the MCA cannot reasonably be read so broadly as to allow Respondents to defeat *habeas corpus* review by removing a prisoner from Guantánamo.

6

established in *Rhines*, and then, if the case is not mooted by the DTA proceedings, provide Petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

## CONCLUSION

For the foregoing reasons, the Court should defer consideration of Respondents' motion to dismiss and Petitioner's motion to stay and abey, pending further guidance from the D.C. Circuit and the Supreme Court, or, alternatively, grant Petitioner's motion and deny Respondents' motion.

Respectfully submitted,

GARVEY SCHUBERT BARER


By /s/ Robert C. Weaver
    Robert C. Weaver, Jr. OSB #80135
    Samuel C. Kauffman, OSB #94352
    GARVEY SCHUBERT BARER
    Eleventh Floor
    121 SW Morrison St.
    Portland, OR 97204
    Tel: (503) 228-3939
    Fax: (503) 226-0259


By /s/ Eldon V.C. Greenberg
    Eldon V.C. Greenberg
    D.C. Bar #159558
    GARVEY SCHUBERT BARER
    Fifth Floor
    1000 Potomac Street, N.W.
    Washington, DC 20007
    Tel: (202) 965-7880
    Fax: (202) 965-1729

    Attorneys for Petitioner

Dated: May 3, 2007