# EXHIBIT A

UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Abdulrahim Abdul Razak Al Ginco, ) | |
| ) | |
| Petitioner-Appellant, ) | |
| ) | Case No. 06-5191 |
| v. ) | and consolidated cases |
| ) | |
| George W. Bush, ) | |
| President of the United States, et al., ) | |
| ) | |
| Respondents-Appellees. ) | |

———————————————————

OPPOSITION TO MOTION TO VACATE THE DISTRICT COURT ORDERS
AND DISMISS THE HABEAS PETITIONS FOR LACK OF JURISDICTION

———————————————————

**TABLE OF CONTENTS**

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    *Boumediene* Is Not Final Or Binding Because That Case Involved The Failure To Exhaust Remedies, Which Are Still Available To Those Petitioners And Are Being Exercised By These Petitioners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Because Exhaustion Of Remedies Is Available To The Present Petitioners, The District Courts Have Discretion To Enter Stay-And-Abey Orders, Which Are Mandatory By Analogy To *Rhines v. Weber*, 544 U.S. 269 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    Under *United Mine Workers*, the Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    The Orders On Appeal, Which Are Procedural And Preliminary To Ultimate Disposition On The Merits, Are Necessary To Protect Petitioners From Torture And Death And To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    The 30-Day Orders Are Minimally Necessary To Effectuate The Anti-Rendition Provisions Of The Convention Against Torture . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    The District Courts Have Authority To Enter 30-Day Notice Orders, Just As They Entered Orders Such As The Protective Orders And The Filter Team Orders, While

Jurisdictional Issues Are Being Litigated In The District
Court, The Circuit Court, And The Supreme Court . . . . . . . . 13

3.  The 30-Day Notice Is Not Burdensome Where There No
Longer Is Fear Of Rendition  . . . . . . . . . . . . . . . . . . . . . . . . 15

E.  The Norm Is For Motions To Dismiss To Be Litigated From A
Final Order Of The District Court  . . . . . . . . . . . . . . . . . . . . . . . 17

F.  *Boumediene* Does Not Establish The Record To Which These
Petitioners Should Be Bound Because They Are Exhausting
Available Remedies And Other Legal Theories May Be Available
On The Particular Facts Of Their Cases . . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Al Odah v. United States*,
    346 F. Supp. 2d 1 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Boumediene v. Bush*,
    127 S. Ct. 1478 (2007) . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 7, 8, 12, 18, 19

*Boumediene v. Bush*,
    450 F. Supp. 2d 25 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boumediene v. Bush*,
    476 F.3d 981 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Carafas v. Lavallee*,
    391 U.S. 234 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Duncan v. Kahanamoku*,
    327 U.S. 304 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hamdan v. Rumsfeld*,
    126 S. Ct. 2749 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hicks v. Bush*,
    452 F. Supp. 2d 88 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Khalid v. Bush*,
    355 F. Supp. 2d 311 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kircher v. Putnam Funds Trust*,
    126 S. Ct. 2145 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Ex parte Milligan*,
    71 U.S. 2 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*\*In re President and Directors of Georgetown College,*
    331 F.2d 1000 (D.C. Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*\*Rasul v. Bush,*
    542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 19

*\*Rhines v. Weber,*
    544 U.S. 269 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 20

*Rivers v. Roadway Express, Inc.,*
    511 U.S. 298 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Siderman de Blake v. Argentina,*
    965 F.2d 699 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Texas v. Cobb,*
    532 U.S. 162 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Booker,*
    543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*\*United States v. United Mine Workers,*
    330 U.S. 258 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8, 14, 20

*United States v. Villato,*
    2 U.S. (Dall.) 370 (C.C. D. Pa. 1797) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Appendix A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

*Authorities upon which we chiefly rely are marked with an asterisk.

## GLOSSARY

CSRT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Combatant Status Review Tribunal

DTA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Detainee Treatment Act of 2005

MCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Military Commissions Act of 2006

v

**Introduction**

The petitioner and other petitioners in these consolidated cases, through counsel, oppose the Respondents' Motion to Vacate the District Court Orders and Dismiss the Habeas Petitions for Lack of Jurisdiction. At the time each petitioner filed his petition, the District Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004). Since that time, the Respondents have claimed that intervening statutes have deprived the District Courts of jurisdiction, a position the petitioners contest based on an array of factual and legal arguments. The Respondents now request that 30-day orders protecting litigants from torture and death in home countries should be vacated, and the underlying petitions should be dismissed, without the opportunity to persuade the District Court that the particular case is viable and to make a record for appellate and Supreme Court review.

The Respondents' position is untenable for six reasons: A) the *Boumediene* case is neither final nor dispositive given the unexhausted remedies (*Boumediene v. Bush*, 127 S.Ct. 1478 (2007)); B) under *Rhines v. Weber*, 544 U.S. 269 (2005), the procedure for addressing a pending petition while remedies are exhausted is for the District Court to stay the proceedings and hold them in abeyance pending exhaustion; C) under *United States v. United Mine Workers*, 330 U.S. 258, 290-91 (1947), while

1

the Supreme Court rules on the jurisdictional questions, the lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition;" D) the stay-and-abey procedure is especially appropriate in the context of orders granted by the District Courts to safeguard against violations of the Convention Against Torture; E) the norm is for motions to dismiss to be litigated from a final order of the District Court; and F) the petitioners are not bound by the record established to date in *Boumediene*.

A.    ***Boumediene* Is Not Final Or Binding Because That Case Involved The Failure To Exhaust Remedies, Which Are Still Available To Those Petitioners And Are Being Exercised By These Petitioners.**

On February 20, 2007, a split panel of this Court decided combined cases involving aliens detained at Guantánamo, finding that post-*Rasul* statutes deprived courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because those petitioners declined to seek review directly with this Court under the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007). The statement of Justices Kennedy and Stevens found that, given "our practice of

2

requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"

The Respondents' reliance on *Boumediene* is misplaced for several reasons. First, the petitioners in that case have filed for reconsideration regarding the disposition of that case. Because the mandate has not issued, the litigation is not final. Second, the petitioners in the present cases have already filed for DTA relief or will likely be doing so in the near future. The Court has the simple and Supreme Court-approved recourse in these cases to allow exhaustion while the district court proceedings are stayed pending the DTA litigation. Third, the dismissal of the District Court proceedings, with their web of protective orders and rulings on issues necessary to the maintenance of litigation, would constitute exactly the type of prejudice to the petitioners' ability to litigate that Justices Kennedy and Stevens instructed that the courts should guard against.

3

The motion to dismiss should be denied because it is premised on an incorrect reading of *Boumediene*.

**B.    Because Exhaustion Of Remedies Is Available To The Present Petitioners, The District Courts Have Discretion To Enter Stay-And-Abey Orders, Which Are Mandatory By Analogy To *Rhines v. Weber*, 544 U.S. 269 (2005).**

Given the need to exhaust remedies under the DTA, the District Court proceedings should continue to be stayed and held in abeyance pending completion of the petitioners' DTA review directly in this Court. In *Rhines*, 544 U.S. at 278, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks of a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. In the absence of intentional dilatory tactics by the petitioner, "it would likely be an abuse of discretion for a district court to deny a stay and to dismiss" a petition

if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey would constitute an abuse of discretion – no deliberate delay, good cause, and potentially meritorious claims – are abundantly present in this case. The petitioners have been attempting to move forward, while the Respondents have obtained stays of over 18 months. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of delay prejudices the petitioners.[1]

There is also good cause for the failure to exhaust until now: the potential remedy did not exist until after the habeas corpus petition was filed and did not purport to provide the habeas relief to which the petitioner was entitled at the time the habeas action was filed. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantanamo detainees face complexities that are similar and worse. The questions left open in the Supreme Court's decision in *Rasul*, which established a right to proceed under § 2241

---

[1] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

5

at the time the petitioner submitted his documents,[2] and the subsequent DTA and Military Commission Act of 2006, have resulted in major complications. The petitioners did not even have the potential DTA remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

The claims raised by the petitioners are substantial and meritorious. For example, in the lead case of *Al Ginco*, the summary judgment motion in the District Court,[3] as well as the Petition filed directly with this Court,[4] establish a number of bases for granting relief on the merits including: the Combatant Status Review Tribunal used evidence that resulted from Taliban torture in violation of Article 15 of the Convention Against Torture; under the laws of war, the petitioner was not within the jurisdiction of the military because the temporal nexus to the time of war is absent; the petitioner did not qualify as an enemy combatant because he came to

---

[2] The construction of § 2241 in *Rasul* is what the statute always meant. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311 n.12 (1994) ("[W]hen this court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.").

[3] The Motion for a Partial Summary Judgment and Exhibits are found in the court record of the District Court (CV 05-1310-RJL) at CR 37 and 39.

[4] *Al Ginco v. Gates*, No. 07-1090 (D.C. Circuit).

the attention of United States authorities when he came forward as a voluntary witness to the human rights violations he suffered at the hands of the Taliban; and a political prisoner of the Taliban does not meet any definition of enemy combatant. Each case has its own factual and legal claims that at least encompass an assertion that the prolonged indefinite detention is unlawful because the petitioner is not an enemy combatant. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, the courts should be in position to proceed immediately on the habeas petitions.

### C.   Under *United Mine Workers*, the Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.

In the statement accompanying the *Boumediene* order, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. 1478 (2007) (statement of Justices Stevens and Kennedy).[5] The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while the matter is under consideration, the courts have "authority from the

---

[5] Quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari).

7

necessity of the case to make orders to preserve the existing conditions and subject

of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v.*

*Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). This Court has not hesitated to apply

these principles:

> Of course, whether or not there was jurisdiction to decide the merits,
> until the question of jurisdiction is determined, there was "authority
> from the necessity of the case to make orders to preserve the existing
> conditions and the subject of the petition . . . ." . . . Clearly there was
> "power to preserve existing conditions while . . . determining [the]
> authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir.

1964) (quoting *United Mine Workers*). This Court should carefully protect the status

quo by maintaining the orders entered to date to assure the petitioners are not

prejudiced in their ability to litigate the DTA action; to preserve potential remedies

in the District Court and on appeal; and to protect the petitioners' safety and lives.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions

necessary to deciding issues in each petitioner's case including: Does the DTA

provide a forum for resolving issues regarding unlawful detention coextensive with

traditional habeas corpus? If not, has the writ been unconstitutionally suspended or

eliminated? Are the MCA and the DTA inapplicable given petitioners' jurisdictional

arguments regarding the absence of initial military jurisdiction, which would

8

foreclose the CSRT from constituting a competent tribunal to render any decision? Is the government taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"?

The Respondent's motion to dismiss should be denied because the Court has insufficient information to answer a number of questions the DTA proceedings will answer. Further, if the District Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the petitioner, there must be an adequate record for this Court's appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that the petitions in the District Court remain in place until after the petitioners have exhausted the DTA procedures. During that process, the Respondents should be foreclosed from prejudicing the petitioners' ability to litigate these questions – at both the District Court and Circuit Court level.

> **D.    The Orders On Appeal, Which Are Procedural And Preliminary To Ultimate Disposition On The Merits, Are Necessary To Protect Petitioners From Torture And Death And To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

The orders involved in this case involve questions of life and death: whether the petitioners should have sufficient notice to raise questions regarding rendition to

a country where they face torture or death in violation of the Convention Against Torture. In all but one case, the District Courts evaluated the competing interests and fashioned the 30-day notice as a balanced resolution of the serious issues raised. Just as the District Courts addressed issues preliminary to ultimate disposition throughout this litigation, the District Courts' orders on the 30-day notice should remain intact pending these appeals and the exhaustion of DTA remedies.

> 1.    *The 30-Day Orders Are Minimally Necessary To Effectuate The Anti-Rendition Provisions Of The Convention Against Torture.*

By maintaining the status quo, the Court provides a minimal mechanism for preventing torture and death in violation of the Convention Against Torture: the petitioners face rendition to countries with some of the worst human rights records in the world; and, in addition, the Respondents have taken affirmative steps that have jeopardized detainees and their families in their home countries. The 30-day notice orders should remain intact throughout this litigation.

The petitioners include citizens of Syria and Uighurs from China and other persons whose designation as enemy combatants may well mean torture or execution if they are repatriated. *See* United States Department of State, Country Reports on Human Rights Practices (2006): Syria (available at http://www.state.gov/g/drl/rls/hrrpt/2006/78863.htm); *id.*: China (available at

10

http://www.state.gov/g/drl/rls/hrrpt/2006/78771.htm).  Even forced repatriation or
rendition to Saudi Arabia is extremely problematic: "Despite close cooperation on
security issues, the United States remains concerned about human rights conditions
in Saudi Arabia.  Principal human rights problems include abuse of prisoners and
incommunicado detention."  United States Department of State, Background Note:
Saudi Arabia (October 2006).  Conditions change, so the level of danger cannot be
reasonably assessed until a transfer is imminent, hence the 30-day notice period to
allow the petitioner to seek further relief if appropriate.  By removing a simple and
relatively unobtrusive protective device during the pendency of litigation, the
Respondents unnecessarily place the petitioners at risk of the potentially lethal
consequences of a treaty violation.

The petitioners also face danger from another source: the Respondents'
intentional exposure of information they knew to be dangerous without taking
reasonable security precautions.  In the litigation with the Associated Press that
resulted in the publication of CSRT transcripts, the Respondents recognized that
information contained in those documents could endanger detainees and their families
from terrorist organizations and, by inference, governments unable to protect against
or sympathetic to such organizations:

11

> If the detainee's identity is connected to his testimony, and terrorist groups or other individuals abroad are displeased by something the detainee said to the Tribunal, DOD believes that this could put his family at serious risk of reprisals-including death or serious harm-at home. This risk also translates to the detainee himself when he is released from detention.

Declaration of Associate General Counsel Karen Hecker, Department of Defense at ¶ 9, filed in *Associated Press v. U.S. Department of Defense*, CV 05-3941 (S.D.N.Y. June 30, 2005). Despite this knowledge, the Respondents exposed CSRT information without taking reasonable steps, such as redaction or selective disclosure, to safeguard information that placed detainees and their families at risk.[6]

The 30-day orders are necessary to ensure that the anti-rendition and refoulment provisions of the Convention Against Torture are honored.[7] The

---

[6] The government's revelation of such material, especially after seeking but not securing consent to disclose from detainees, also creates another issue not resolved in *Boumediene*: does the intentional action to expose life-endangering facts, in the context of New York civil litigation, create a sufficient nexus between detainees held for six years in territory exclusively controlled by the United States and this country that a higher level of constitutional protection applies?

[7] Article III of the Convention Against Torture provides:

1.  No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.
2.  For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

12

protections provided by CAT defend principles so deeply ingrained in our country's values that violations transgress a *jus cogens* norm. *Siderman de Blake v. Argentina*, 965 F.2d 699, 717 (9th Cir. 1992). The District Court 30-day notice orders implicate the same core values, warranting this Court's full and vigorous protection.

> 2.    *The District Courts Have Authority To Enter 30-Day Notice Orders, Just As They Entered Orders Such As The Protective Orders And The Filter Team Orders, While Jurisdictional Issues Are Being Litigated In The District Court, The Circuit Court, And The Supreme Court.*

The District Courts have recognized that, regardless of the ultimate resolution of jurisdictional questions, the courts are authorized to enter orders necessary to the ultimate litigation. For example, Judge Leon, who found extremely limited detainee rights, entered an order on the merits of the Respondents' motion for filter team review of attorney-client material, denying the request in *Boumediene v. Bush*, 450 F.Supp.2d 25 (D.D.C. 2006), while Judge Robertson granted the same request on the merits in *Hicks v. Bush*, 452 F.Supp.2d 88 (2006). The parties have been operating satisfactorily under the protective order authorized by the District Courts in Al Odah for over two years. *See Al Odah v. United States*, 346 F.Supp.2d 1 (D.D.C. 2004).[8]

---

[8] The government's attempts to subvert the District Courts' protective orders, without exhausting the District Court remedies regarding implementation of the protective orders, constitute a step "to prejudice the position of petitioners in seeking review in this Court" about which Justice Kennedy warned.

13

These orders, as well as the 30-day notice orders, are appropriate because the District Courts have authority to enter needed orders while they determine their own jurisdiction. *United Mine Workers*, 330 U.S. at 291; *see also Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction"). During the time the litigation on jurisdiction is pending, the preliminary orders should remain in full effect. This is especially true because the District Court must make individual decisions in each case.

For example, Judge Leon recognized that, even a limited view of habeas corpus required a preliminary determination whether the military could constitute a competent tribunal to exercise control over a detainee. *Khalid v. Bush*, 355 F.Supp.2d 311, 329 (citing *Application of Yamashita*, 327 U.S. 1, 8 (1946)). This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is exactly what the Supreme Court did in *Ex parte Milligan*, 71 U.S. 2 (1866). There, the Court found authority to address Milligan's claims that a writ of habeas corpus should issue notwithstanding a statute that suspended the writ. Because the Court concluded Milligan was not a prisoner of war and not covered by the suspension statute, the Court granted the writ. 71 U.S. at 131. *See also Duncan*

14

*v. Kahanamoku*, 327 U.S. 304 (1946); *United States v. Villato*, 2 U.S. (Dall.) 370 (C.C. D. Pa. 1797).

The issues regarding application of the habeas corpus statute, the statutes purporting to limit the writ, and the availability of the common law or constitutional writ of habeas corpus remain to be resolved in each case once remedies are exhausted. During the pendency of such decisions, the District Courts' authority to issue preliminary procedural orders remains undiminished.

> 3.    *The 30-Day Notice Is Not Burdensome Where There No Longer Is Fear Of Rendition.*

The Respondents complain that the 30-day notice orders "interfere with the critical ability of the Executive Branch to negotiate and effectuate the transfer of detainees held at Guantanamo" (Motion at 5). The specter of the petitioners' torture and death, either by a country with little respect for human rights or as a result of the Respondents' publication of CSRT material without security precautions, warrants the very mild requirement that a detainee be given an opportunity to articulate an objection. Where the fears that prompted the protective order have been assuaged, the petitioners have demonstrated flexibility that belies the Respondents' concerns.

For example, in *Nazul Gul v. Bush*, Nos. 06-5196 and 06-5205, one of the present consolidated cases, the Respondents notified counsel on Friday, February 16,

2007, that transfer to Afghanistan had been approved and that, because an attorney visit to Guantanamo was scheduled for the following week, waiver of the 30-day notice was being requested. The next business day, after counsel made inquiries regarding current conditions and took steps to assist in Mr. Gul's transition, counsel met with Mr. Gul and telephoned the consent to vacate the 30-day notice requirement. The parties filed a formal stipulation on February 26, 2007. Shortly thereafter, Mr. Gul, who had presented the District Court with conclusive evidence that he was innocent and had been held unlawfully for four years in a case of mistaken identity, arrived in Afghanistan and reunited with his family.[9] The moderate measure ordered

---

[9] Mr. Gul filed a separate response with this Court to the Respondents' motion to dismiss, consenting to dismissal of the appeal but objecting to dismissal of the underlying habeas corpus petition. *Nazul Gul v. Bush*, No. 06-5196 (D.C. Circuit April 9, 2007). The matter is currently before the District Court with separate habeas corpus issues because 1) the DTA does not apply to persons who are no longer in Department of Defense custody, 2) the Respondents expressly declined to declare that Mr. Gul had been unlawfully detained because he was not an enemy combatant, and 3) the transfer of a habeas petitioner does not moot a case where – as does an enemy combatant designation – stigma and collateral consequences adversely affect the petitioner (*Carafas v. Lavallee*, 391 U.S. 234, 239-40 (1968)). On similar grounds, the petitioners in *Alsaaei v. Bush*, No. 06-5325, agree the Respondent's appeal on the 30-day notice should be dismissed but join in opposing the motion to dismiss the underlying habeas case.

16

by the District Court served its protective purpose without unduly prejudicing the Respondents.[10]

### E. The Norm Is For Motions To Dismiss To Be Litigated From A Final Order Of The District Court.

The Respondents are asking this Court to enter orders without giving the District Courts the opportunity to rule in the first instance. This Court's authority properly extends to final decisions of the District Courts. 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). The present cases are before the Court as interlocutory appeals addressing preliminary matters, pursuant to the limited jurisdiction provided by 28 U.S.C. § 1292. There is no final order of the District Courts regarding jurisdiction or the merits of any of these habeas petitions. The Court should not expand beyond its normal jurisdiction but should rather permit the District Courts to determine their own jurisdiction in the first instance. *See Kircher*, 126 S. Ct. at 2155. It would be premature for this Court to determine the dispositive questions without first giving the District Courts the opportunity to review the claims, to consider a record, and to decide on the facts and law of each individual case.

---

[10] Even where a visit is not arranged, the same rapid response is available under the protective order given its provision for telephone calls between attorneys and detainees under compelling circumstances at the discretion of the Respondents.

**F.**    *Boumediene* **Does Not Establish The Record To Which These Petitioners Should Be Bound Because They Are Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of Their Cases.**

The Respondents' request for dismissal fails to recognize the protean detainee factual settings and resulting legal issues. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by the petitioners. *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved). The most profound difference for all petitioners will be the resolution of the now-open question of the scope and efficacy of the DTA remedy, which will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene* statement accompanying the denial of certiorari.

The DTA litigation, in addition to providing insight regarding the DTA as an alternative to habeas corpus, also will provide the opportunity for determining the District Courts' role in the DTA exhaustion process. Besides providing the

18

procedural context for the litigation, DTA petitions have included alternative requests for remand to the District Court to resolve controverted facts, remand to the District Court to address initial jurisdiction questions in the first instance, and remand to the District Court based on the inadequacy of the DTA procedure for factual development and equitable relief commensurate with habeas corpus. For the Court to exercise these options, the present habeas cases must be stayed and held in abeyance.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, should involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and address these petitioners' unique claims, including challenges under the bill of attainder, equal protection, due process, habeas corpus, and *ex post facto* clauses.

19

## Conclusion

The petitioners' habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and the petitioners have not had their individual facts and legal arguments heard. The Respondents' motion to undo the carefully crafted measures by the District Courts to balance competing interests is not only premature but unnecessarily places detainees in danger of torture and death. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *United Mine Workers*, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition;" under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time for the DTA direct actions to be litigated.

Dated this 19th day of April, 2007.

Steven T. Wax/Stephen R. Sady
Federal   Public   Defender/Chief   Deputy
Federal Public Defender

Patrick J. Ehlers
Assistant Federal Public Defender

20

CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2007, I filed and served the foregoing Opposition to Motion to Vacate the District Court Orders and Dismiss the Habeas Petitions for Lack of Jurisdiction by causing two copies to be delivered to the Privilege Review Team via Federal Express, with the original and four copies to be forwarded to the Court, and one copy to be conformed and returned to our office.

I further certify that upon receiving clearance from the Privilege Review Team, one copy will be forwarded to the following counsel of record via U.S. mail:

Peter D. Keisler
Jonathan F. Cohn
Douglas N. Letter
Robert M. Loeb
Catherine Y. Hancock
Civil Division, Room 7268
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

Ronald A. Krauss
Office of the Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street
Suite 306
Harrisburg, PA 17101

Michael D. Hausfeld
Fryszman Agnieszka
Cohen, Milstein, Hausfeld & Toll, PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005-3964

David L. Engelhardt
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006-5403

Sergio Fidel Rodriguez
Federal Defender Program for Northern District of Illinois
55 East Monroe Street
Suite 2800
Chicago, IL 60603

Rebecca P. Dick
Dechert LLP
1775 Eye Street, N.W.
Washington, D.C.  20006

Carolyn Marie Welshhans
Dechert LLP
1775 Eye Street, NW
Suite 900
Washington, DC 20006

David Jeffrey Bradford
Jenner & Block
One IBM Plaza
Suite 4700
Chicago, IL 60611

David William DeBruin
Jenner & Block
601 13th Street, NW
Suite 1200 South
Washington, DC 20005

Gitanj ali Gutierrez
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012

Eldon Van Cleef Greenberg
Garvey, Schubert & Barer
1000 Potomac Street, NW
Suite 500
Washington, DC 20007-3501

Paul Charles Curnin
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017-3954

Candace Marie Hom
Federal Public Defender
972 Broad Street
Fourth Floor
Newark, NJ 07102

Bernard J. Casey
Douglas Kevin Spaulding
Reed Smith LLP
1301 K Street, NW
Suite 1100, East Tower
Washington, DC 20005-3317

Paul Schoeman
Kramer, Levin, Naftaslis & Frankel
1177 Avenue of the Americas
New York, NY 10036

George Millington Clarke, III
Baker & McKenzie
815 Connecticut Avenue, NW
Washington, DC 20006

Angela Coin Vigil
Baker & McKenzie
1111 Brickell Avenue
Suite 1700
Miami, FL 33131

Jana Ramsey
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064

Jill C. Dozark

**APPENDIX A**

Counsel for the following cases join in this opposition:

*Ali Hussian Mohammad Muety Shaaban v. George W. Bush, et al.*, CV 06-5197; *Hajji Ghalib v. George W. Bush, et al.*, CV 06-5198; *Abdul Raheem Ghulam Rabbani, et al., v. George W. Bush, et al.*, CV 06-5235; *Fazil Rahman v. George W. Bush, et al.*, CV 06-5284; *Abdulla Wazir Zadran, et al., v. George W. Bush, et al.*, CV 06-5285; *Salim Said, et al., v. George W. Bush, et al.*, CV 06-5286; *Alif Mohammad v. George W. Bush, et al.*, CV 06-5287; *Abdl Hadi Omar Mahmoud Faraj, et al., v. George W. Bush, et al.*, CV 06-5320; *Abdullah Ali Saleh Gerab Alsaaei, et al., v. George W. Bush, et al.*, CV 06-5325; *Labed Ahmed v. George W. Bush, et al.*, CV 06-5326; *Ghanim Abdulrahman Al-Harbi, et al., v. George W. Bush, et al.*, CV 06-5328; *Abdul Wahab v. George W. Bush, et al.*, CV 06-5329; *Ali Thabid, et al., v. George W. Bush, et al.*, CV 06-5384; and *Yasin Muhammed Basardh v. George W. Bush, et al.*, CV 06-5385.

A-1