~~SECRET//NOFORN~~

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Filed with Classified
Information Security Officer

CISO S. Harwood

Date 8-6-2012

ABDULHADI OMER MAHMOUD FARAJ,

    *Petitioner,*

v.

BARACK H. OBAMA, *et al.*,

    *Respondents.*

Civil Action No. 05-1490 (PLF)

## PETITIONER'S REPLY IN FURTHER SUPPORT OF MOTION FOR INJUNCTIVE OR DECLARATORY RELIEF REGARDING RESPONDENTS' WIKILEAKS GUIDANCE

Opposing this Motion, the government deploys a parade of false premises, straw men, and bogeymen in a bid to distract the Court from the real issues at hand.[1] This Motion is emphatically not about granting unauthorized individuals access to classified information or about contesting the Executive's control over access to such information or its classification. Nor can the disagreement be over the possibility of an unauthorized disclosure of classified information—███████████████████████████████████ This is, however, a dispute about whether the government can impose arbitrary restrictions on the freedom to "download, save, print, disseminate, or otherwise reproduce, maintain, or transport" information that is now in the public domain.

While the government may wish to bury its head in the sand and pretend that the ████████████████████████████████ Petitioner's contention, simply, is that the Court's

---

[1] Petitioner filed his Motion on the public docket. ECF No. 279. By choosing to include in its Opposition information it has classified, the government has pulled this Reply and, in all likelihood, the Court's resulting Opinion, under classified seal. Petitioner respectfully requests that, upon issuing its ruling on the instant Motion (after hearing any oral argument it wishes to order), the Court instruct Respondents to expedite the preparation of public versions of the Opposition, Reply, and Opinion.

~~SECRET//NOFORN~~

Protective Order covers the very scenario at hand, safeguarding all legitimate interests, and that undersigned counsel need only abide by its explicit terms. The government itself concedes that the Guidance and the December Email, along with the sweeping restrictions they purport to impose, are superfluous. Accordingly, this Court should declare them void or, in the alternative, enjoin the government from enforcing them as an unwarranted and unprecedented encroachment on lawful activity.

The government offers a series of unfounded and alarmist claims about counsel's handling of WikiLeaks documents, interspersed with equally hollow attempts to undermine the Motion's legal foundations. This Reply will attempt to sort these arguments and address them in turn. The issues all stem directly from the proceedings before this Court and the governing instruments it consecrated. The Court's expertise in the interpretation of those instruments should counsel resolution of this Motion in Petitioner's favor.

### I. THE GUIDANCE IS UNLAWFUL AND INCONSISTENT WITH THE PROTECTIVE ORDER AND THE OTHER APPLICABLE INSTRUMENTS

The government seems to regard any challenge to its Guidance and December Email as "an attempted side-step around ... clear prohibitions." Resp'ts' Opp'n to Pet'r's Mot. for Injunctive or Declaratory Relief Regarding Resp'ts' WikiLeaks Guidance ("Opp'n") at 15, Notice of Classified Filing at ECF No. 286. ███████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████ Opp'n at ███ That fact, however, is inconsequential
████████████████████████████████████████████████████

Opp'n ███ Guidance, Pet'r's Mot. for Injunctive or Declaratory Relief Regarding Resp'ts' WikiLeaks Guidance,

- 2 -
~~SECRET//NOFORN~~

~~SECRET//NOFORN~~

and does not impair Petitioner's analysis of the applicable instruments. *See* Pet'r's Mot. for Injunctive or Declaratory Relief Regarding Resp'ts' WikiLeaks Guidance ("Mot."), ECF No. 279, at 9-11.

As noted in Petitioner's Motion, even when the government ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ still do not confer to the government any authority to selectively silence that party as per the Guidance and Email. *See* Mot. at 10 ("Even if the government had advanced that claim, it still would not have triggered the Memorandum of Understanding's consideration clause."). The interpretation the government presses, on the other hand, raises grave constitutional concerns.

The Supreme Court held that a court's protective order limited to the context of pretrial civil discovery does not offend the First Amendment as long as it "does not restrict the dissemination of *the information* if gained from other sources." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (emphasis added). The Court found that "such a protective order prevents a party from disseminating only that information obtained through use of the discovery process" and that "the party may disseminate *the identical information* covered by the protective order as long as the information is gained through means independent of the court's processes." *Id.* at 34 (emphasis added).

Here, the applicable instruments grant security-cleared counsel access to relevant classified discovery in these habeas corpus cases in exchange for a waiver of any First

ECF No. 279 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-3-
~~SECRET//NOFORN~~

SECRET//NOFORN

Amendment rights with regard to those particular documents. ███

███ remains unaffected by the applicable instruments' strictures and, a fortiori, by those contained in the Guidance and December Email. Any other outcome runs into the First Amendment concerns articulated in *Seattle Times*.

To be sure, the Protective Order's sanctions would be triggered if security-cleared counsel were to release the actual classified information they received in these proceedings into the public domain. *See* Protective Order, Mot., Ex. D, at ¶¶ 31, 51. But that instrument is equally clear that where, as here, for reasons independent of counsel, "classified information enters the public domain, ... counsel is not precluded from making private or public statements about the information." *Id.* at ¶ 31.

Indeed, the Court's Protective Order explicitly contemplates "the event that classified information enters the public domain," ███ *Id.* That the Court refers to "the public domain," rather than the distinct categories of "unclassified" or "officially disclosed" information cannot be dismissed or read out of existence as the government appears to do when it declares that "proscriptions against unauthorized disclosure apply without limitation or exception to any classified information to which counsel obtains access." Opp'n at 14. The government is equally mistaken in its reliance on the Protective Order's instructions on handling "all classified information petitioners' counsel otherwise possesses or maintains," other than that provided by the government. *Id.* at 13. The government seems to suggest that this language applies ███ even though that interpretation injects contradiction into a single instrument, another provision of which dispenses

~~SECRET//NOFORN~~

with handling strictures when classified information enters the public domain. Protective Order, Mot., Ex. D, at ¶ 31. The language is more naturally read as a reference to classified information received from other security-cleared attorneys or developed derivatively from government-sourced materials.[3]

Importantly, the Protective Order leaves expressive freedom mostly unfettered in the scenario where "classified information enters the public domain," providing only that counsel "may not make any ... statements revealing personal knowledge from non-public sources regarding the classified ... status of the information or disclosing that counsel had personal access to classified or protected information confirming, contradicting, or otherwise relating to the information already in the public domain." *Id.* Accordingly, counsel is bound in all circumstances—including during exchanges with Petitioner—not to reveal personal knowledge from classified sources. But there is no basis for (nor is there any logic to) the government's purported prohibition on downloading, saving, printing, disseminating, or otherwise reproducing, maintaining, or transporting publicly-accessible information, especially when juxtaposed with the leave to make private and public statements about that information.

## II. THE GUIDANCE SWEEPS TOO BROADLY

To the extent that the government is concerned about improper materials reaching its prison camps at Guantánamo Bay, the Guidance and December Email are far from the least restrictive means to prevent that result. In fact, the more limited mechanisms that already exist amply guard against any harm. Were counsel to print documents from WikiLeaks, they would

---

[3] Interestingly, the government's all-encompassing statements in this case are at considerable odds with the more conservative position it takes elsewhere. *See, e.g.*, Resp'ts' Opp'n to Pet'r's Mot. for Limited Modification of Protective Orders, *Mohammed al-Qahtani v. Obama*, No. 05-1971 (D.D.C. July 30, 2012), ECF No. 276, at 5 ("By its terms, the Protective Order applies to the aspects of 'these matters' to govern the petitioners' counsel's access to and use of any classified information 'involved in these cases' 'for the purposes of these proceedings.'").

- 5 -
~~SECRET//NOFORN~~

~~SECRET//NOFORN~~

still be required to go through a robust review process before bringing those documents into meetings with clients at Guantánamo. The Habeas Privilege Review Team reviews all incoming and outgoing documents from prison camps at Guantánamo. Protective Order, Mot., Ex. D, at 158-61. The government retains an opportunity at that stage to exclude any such materials before prisoners can see them, and counsel would have the chance to dispute whether exclusion is appropriate under the Protective Order. Preventing counsel from printing, saving, downloading, or transporting is therefore unnecessary to achieve the government's goal.

The purported prohibitions would impact a range of protected expression, including undersigned counsel's teaching. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 482 (1985) (holding that freedom of speech "includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought, and freedom to teach"). If the government wishes to prevent security-cleared counsel from sharing ▮▮▮▮▮▮▮▮▮▮ publicly-available information with Guantánamo prisoners, then it can ask counsel to so stipulate or seek an order from the Court to that limited effect, without prohibiting a vast swath of legitimate and constitutionally-protected activity.[4] This issue should be resolved in that manner and at that stage, not through the wholly improper Guidance.

### III. SECURITY-CLEARED COUNSEL CAN BE NO DIFFERENT FROM THE PUBLIC AT LARGE IN THIS REGARD AND THE GOVERNMENT MAY NOT FURTHER RESTRICT THEIR USE OF WIKILEAKS MATERIALS

The government contends that, "[b]ecause Petitioner's counsel hold security clearances and are known to have access to classified information regarding their clients," they "occupy a

---

[4] The Guidance would even seem to restrain security-cleared attorneys from engaging in various forms of expression in their own homes, irrespective of whether such private conduct could impact public perception in a manner that might implicate the government's stated concerns. *See City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) ("A special respect for individual liberty in the home has long been part of our culture and our law … ; that principle has special resonance when the government seeks to constrain a person's ability to *speak* there.").

SECRET//NOFORN

position from which they ... would be perceived as knowing ... ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ and, therefore, their use of WikiLeaks materials ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But that is fundamentally an argument for the total silencing of Petitioner's counsel—it is a step back to the December Email's blanket prohibition on all statements, repudiating even the Guidance and the arbitrary restrictions it proposes.

Indeed, if the concern is that Petitioner's counsel speak with authority by virtue of their security clearances, then it is unclear how the specific restrictions the government proposes in its Guidance would cabin the concern. In other words, the government can offer no reason why the conduct it wishes to proscribe—downloading, saving, printing, etc.—is somehow more "authoritative," and therefore more dangerous, than the conduct allowed under both the Protective Order and the Guidance, to include private and public statements. But, of course, the government is stuck with that unresolvable incoherence, because it cannot propose the total silencing of counsel without even more flagrantly running afoul of the Protective Order (not to mention the Constitution).

In any event, the appropriate safeguards are already in place. As discussed above, the Court's Protective Order contemplated this very situation and cautiously devised parameters to contain any risk of harm. *See* Protective Order, Mot., Ex. D, at ¶ 31. Counsel are just as capable of abiding by their solemn obligation not to reveal personal knowledge from classified sources while printing and distributing WikiLeaks materials as they are when they make public or private statements about those same materials.

SECRET//NOFORN

While the government demands "deference" and blind trust, Opp'n at 31, what it proposes is no more than a thinly-disguised attempt at a backdoor reengineering of the Court's Protective Order. For instance, "potentially classified information" is a term of the government's invention. Its utility for purposes of maintaining public deniability is not questioned here, yet it is unclear how it serves beyond and, moreover, it yields absurd outcomes in this context. If the government's logic is heeded, then, to protect "potentially classified information," countless other security-cleared people must be gagged and instructions akin to the Guidance must issue to all individuals who held security clearances in the 2002 to 2012 period in positions where they may be thought to have had access ███████████████████████████████

███████████████

Fortunately, that ship has long ago sailed. The Protective Order already accounts for all legitimate equities and there is no reason for this Court to abandon the balance it carefully struck therein, let alone permit the government to reinvent the wheel in such absurd shape. Petitioner's position is far simpler: to continue to abide by the Protective Order. Even the government seems to concede that the Guidance is superfluous. *See* Opp'n at 3 (noting that Protective Order and other instruments would still be effective if Court granted requested relief). For the reasons above, the Court should void or enjoin the Guidance and Email.[5]

### IV. PETITIONER HAS STANDING TO INVOKE COUNSEL'S FIRST AMENDMENT RIGHTS IN THIS LITIGATION

Mr. Faraj has standing to invoke undersigned counsel's First Amendment rights under the third party standing rule because the restrictions that the Guidance and December Email purport

---

[5] The government suggests that the Court treat Mr. Faraj's request for a declaratory judgment as "surplusage." Opp'n at 33 n.9. There is no basis for that claim. In the instant Motion, declaratory judgment is one of two principal and alternative forms of relief sought.

- 8 -
SECRET//NOFORN

~~SECRET//NOFORN~~

to impose on counsel adversely affect the attorney-client relationship and Mr. Faraj's ability to benefit fully from undersigned counsel's assistance. Standing is established when a party has suffered "some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). More specifically, the party must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted). There must be a causal connection between the injury and the conduct complained of. *Id.* Also it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision, *id.*, and the grievances may not be generalized. *Warth*, 422 U.S. at 499-500.

The Supreme Court has held that the limitations on a litigant's assertion of third party rights are not constitutionally mandated but, rather, "stem from a salutary rule of self-restraint designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." *Craig v. Boren*, 429 U.S. 190, 193 (1976). There is an exception, however, permitting the assertion of third party rights where the challenged policy or action would adversely affect the relationship between the litigant and the third party whose rights are violated. *See generally id.* at 193. Here, Mr. Faraj satisfies each of the elements and therefore has standing to seek declaratory judgment from the Court or, in the alternative, an injunction against the enforcement of the Guidance and December Email.

First, even setting aside the █████████████████████ directly with Mr. Faraj, the Guidance limits undersigned counsel's ability to live up to their ethical obligations of loyalty and zealous representation, including through adherence to American Bar Association Rule of Professional Conduct 3.6(c), which permits public advocacy "to protect a client from the

substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." *See* Mot. at 5; *see also Wounded Knee Legal Def./Offense Comm. v. Fed. Bureau of Investigation*, 507 F.2d 1281, 1284 (8th Cir. 1974) (holding that "a lawyer has standing to challenge any act which interferes with his professional obligation to his client"). This Court has long-recognized in these habeas cases the sanctity of the attorney-client relationship and of the ethical duties that undergird it. The government does not presently challenge that principle, at least not in pending habeas cases. By interfering with the attorney-client relationship in this manner and also preventing Mr. Faraj from receiving the full benefit of his legal team's abilities, the Guidance inflicts an actual and concrete injury on Mr. Faraj.[6]

Second, the Guidance proximately restricts Mr. Faraj's attorneys from engaging with the ████████████ in the same way as the general public, thus directly imposing the injury at issue.

Third, should this Court void the Guidance and December Email or enjoin their enforcement, Mr. Faraj's attorneys would be able ████████████ ████████████ adequate representation to Mr. Faraj, consistent with their ethical obligations.

Fourth, Mr. Faraj's grievance is not generalized or shared by the broader public, but rather limited to his particular case and those of a miniscule class of indefinitely imprisoned

---

[6] Notably, the challenged Guidance and December Email threaten criminal and civil sanctions for attorneys who violate their terms. *See* Mot. at 11, 15. Counsel "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010) (citation and internal quotation marks omitted). *See also Doe v. Bolton*, 410 U.S. 179, 187-88 (1973) (holding that group of health professionals "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief" and could assert patients' constitutional rights in attack on statute imposing criminal sanctions on health professionals). The instant challenge to the Guidance and December Email should stand for this additional reason.

SECRET//NOFORN

individuals at Guantánamo Bay who are represented by security-cleared attorneys in ongoing habeas corpus petitions.

Finally, Mr. Faraj asserts his own entitlement to adequate and competent representation as well as his attorneys' First Amendment rights. Should the Guidance and December Email be enforced, Mr. Faraj's attorneys would suffer criminal or civil sanctions for engaging in such activities as downloading, printing, or saving materials from WikiLeaks, a public source. However, Mr. Faraj's attorneys must engage in some of these purportedly restricted activities in order to fulfill their ethical obligations to provide competent representation. Therefore, Mr. Faraj may in this limited circumstance invoke the rights of his attorneys in addition to his own in this Motion.

Because Mr. Faraj is proximately injured by the Guidance, he has standing to move the Court to declare the Guidance void, or enjoin the government from enforcing its terms in the future.[7] In addition, because the relationship between Mr. Faraj and his counsel is obstructed by the Guidance, he may assert the rights of his attorneys in so moving the Court.

### V. THE GUIDANCE AND DECEMBER EMAIL EFFECT AN UNCONSTITUTIONAL PRIOR RESTRAINT

The cases that the government relies on to claim that security-cleared counsel "have no First Amendment right" to handle information placed in the public domain by WikiLeaks are either inapposite or actually support Petitioner's position. This Court should not accept the government's invitation to issue a ruling that would be entirely unprecedented and baseless.



~~SECRET//NOFORN~~

The government points primarily to three cases that, unlike the instant matter, all involved former government employees who wished to introduce classified information into the public domain for the first time or were responsible for its publication in the first place. *See* Opp'n at 25-26. In *Wilson v. C.I.A.*, "[i]t was Ms. Wilson herself who proceeded, without authorization, to approve *public* disclosure of the classified information." 586 F.3d 171, 174-75 n.2 (2d Cir. 2009) (emphasis in the original). The court's narrow holding was "that a former CIA agent cannot use her own unauthorized disclosure of classified information to challenge the Agency's ability to maintain the information as classified." *Id.* The plaintiff in *Stillman v. C.I.A.* submitted a book manuscript for pre-publication government approval and it was deemed to contain classified information. 319 F.3d 546, 547 (D.C. Cir. 2003). There is no claim apparent in that case that any of the manuscript's content drew on information already in the public domain without revealing personal knowledge from classified sources. *United States v. Marchetti* similarly involved another former CIA employee who asserted a right "to write and publish what he pleases about the Agency and its operations" drawing on classified information "acquired ... while in a position of trust and confidence." 466 F.2d 1309, 1311, 1313 (4th Cir. 1972). The court held simply that "Marchetti retains the right to speak and write about the CIA and its operations, and to criticize it as any other citizen may, but he may not disclose classified information obtained by him during the course of his employment which is not already in the public domain." *Id.* at 1317.



SECRET//NOFORN



Not unlike this Court in its Protective Order, the *Marchetti* court anticipated circumstances where "[i]nformation, though classified, may have been publicly disclosed." 466 F.2d at 1318. In such instances, it held, "Marchetti should have as much right as anyone else to republish it." *Id.* See also *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (holding that "party may disseminate *the identical information* covered by the protective order as long as the information is gained through means independent of the court's processes") (emphasis added). The outcome in this case should be no different.

Moreover, all of the government's cases revolved around pre-publication review provisions embedded in secrecy agreements that the plaintiffs signed as government employees. In *Wilson*, a core consideration was "[t]he CIA's requirement that current and former employees obtain Agency clearance before disseminating any material related to their employment" and the fact that the plaintiff had accordingly "promised ... to submit for review by the [CIA]" any manuscripts. 586 F.3d at 178, 183. The plaintiff in *Stillman*, too, "had signed several non-disclosure agreements that required him to present [manuscripts] to the Government for prepublication review." 319 F.3d at 547. And *Marchetti* involved a "provision for submission of material to the CIA for approval prior to publication." 466 F.2d at 1318.

~~SECRET//NOFORN~~

Not only is there no such "contract" in this case, *id.* at 1311, but the government also contends that there ought to be no opportunity for judicial review of the Executive's decision to arbitrarily silence some of undersigned counsel's expressive activity. *But see id.* at 1317 (holding that because "First Amendment rights are involved ... Marchetti would be entitled to judicial review of any action by the CIA disapproving publication of the material").

The government's remaining claim that Petitioner's counsel assumed an obligation to protect all classified information in existence, *see* Opp'n at 26 n.6, 27, is absurd for reasons that have already been put forth. *See* Mot. at 7-11. Further, the claim finds no support in the very cases the government adduces. *See Stillman v. C.I.A.*, 517 F. Supp. 2d 32, 38 (D.D.C. 2007) (noting that security-cleared individuals are restricted "from *disclosing* classified information obtained *while* ... bound by a secrecy agreement") (emphasis added); *Wilson*, 586 F.3d at 178 (referencing agreement "never [to] *disclose* [classified or classifiable] information or materials obtained *in the course of her employment* with the CIA") (emphasis added).[8] This Court should not be misled by the government and should declare the Guidance void as an unconstitutional prior restraint or, in the alternative, enjoin its enforcement.

## VI. PETITIONER MEETS THE STANDARD FOR INJUNCTIVE RELIEF

A party seeking an injunction must satisfy a four-factor test before a court may grant such relief. The party must demonstrate that: (1) she has suffered an irreparable injury; (2) remedies

---

[8] The government again misses the point when it argues that the cases involving media parties that Petitioner cites offer no guidance. Opp'n at 26 n.6, ████████████████████████████████████████ cites directly inform that conclusion. *See* Mot. at 13-17. ████████████████████ Both *McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983), and *United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972), cases Petitioner cited, Mot. at 17, involved proposed publications that would have included classified information.

~~SECRET//NOFORN~~

available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also, e.g., Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. *See, e.g., Romero-Barcelo*, 456 U.S. at 320.

The first and second factor require that the injury "be both certain and great; it must be actual and not theoretical." *Allina Health Services v. Sebelius*, 756 F. Supp. 2d 61, 67 (D.D.C. 2010) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "The moving party must show the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quotation marks omitted).

Here, the government's restrictions on Mr. Faraj's attorneys' ability to print, save, download, transport or disseminate documents made available by WikiLeaks causes irreparable injury that cannot be remedied other than through the Court's intervention. As explained above, unless the Court voids or enjoins the Guidance and December Email, Mr. Faraj will not receive the full benefit of his legal representation. The equitable relief Mr. Faraj seeks here is therefore necessary.

Third, the court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Romero-*

~~SECRET//NOFORN~~

*Barcelo*, 456 U.S. at 312 (quoting *Yakus v. United States*, 321 U.S. 414, 440 (1944)). Here, an injunction preventing the government from enforcing the Guidance and December Email will minimally affect the government. On the other hand, the foundational instruments protecting against the improper dissemination of classified documents—including the Protective Order—retain full force and effect.

Finally, in exercising their sound discretion, courts of equity should pay particular regard to the public consequences of employing the remedy of injunction. *Id.* (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 500 (1941)). The elimination of the Guidance and December Email will not cause the unauthorized disclosure of any classified documents. █████████

~~SECRET//NOFORN~~

## CONCLUSION

The Court should declare the Guidance and December Email void or, in the alternative, enjoin the government from enforcing them.

Dated: August 6, 2012

Respectfully submitted,

*[signature]*

Ramzi Kassem
**Main Street Legal Services, Inc.**
City University of New York
School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558

Robert C. Weaver, Jr. OSB#80135
Samuel C. Kauffman, OSB#94352
John C. Rothermich, OSB#07168
**GARVEY SCHUBERT BARER**
Eleventh Floor
121 SW Morrison Street
Portland, OR 97204
Tel.: (503) 228-3939
Fax: (503) 226-0259

Eldon V.C. Greenberg
D.C. Bar #159558
**GARVEY SCHUBERT BARER**
Fifth Floor
1000 Potomac Street, N.W.
Washington, DC 20007
Tel.: (202) 965-7880
Fax: (202) 965-1729

*Attorneys for Petitioner Abdulhadi Omer Mahmoud Faraj*

- 17 -
~~SECRET//NOFORN~~
UNCLASSIFIED//FOR PUBLIC RELEASE